CASE 51—PETITION ORDINARY—NOVEMBER 13.

## City of Henderson v. Sandefur & Co.

APPEAL FROM HENDERSON COMMON PLEAS COURT.

A CITY IS NOT BOUND TO KEEP ALL OF ITS STREETS IN GOOD REPAIR UNDER ALL CIRCUMSTANCES, but only such streets and parts of streets as are necessary for the convenience of the traveling public; and as streets are required for use, they must be placed in a reasonably safe condition.

The city must be permitted to exercise its discretion as to whether the public interests require the improvement of the streets in the uninhabited or sparsely settled portions of it, and its decision is final.

*A city is not liable* for injuries to horses and carriage resulting from a failure to improve a street which was not needed for the use or convenience of the public.

MALCOLM YEAMAN, . . . . . . . . . For Appellant,

CITED

City Charter of Henderson.
Acts 1867, vol. 1, p. 320.      3 Bem. & Adol. 77.
Dillon on Mun. Cor., sec. 753.
5 Bing. 91, Hurly v. Lyme Regis.
1 Black. 40, Wightman v. The Corporation of Washington.
8 Bush, 421, Lou. City R. R. Co. v. Louisville.
15 Eng. Com. L. Rep. 376.      23 Eng. Com. L. Rep. 32.
20 Ill., Goodrich v. Chicago.
53 Mo. 290, Bassett v. The City of St. Joseph.
97 Mass. 258, Titus v. Inhabitants of Northridge.

City of Henderson v. Sandefur & Co.

VANCE & MERRITT, . . . . . . . . . For Appellees,

.CITED

The Charter of the City of Henderson.

Dillon on Mun. Cor., sec. 789.

7 B. Mon. 38, Commonwealth v. Hopkinsville.

2 Statute Laws (M. & B.'s), 1506.

9 Bush, 63, Gedge v. Commonwealth.

4 Amer. Rep. 194–204.

JUDGE COFER DELIVERED THE OPINION OF THE COURT.

The appellees sued the city of Henderson to recover damages for injuries to their horses and carriage, alleged to have resulted from the negligence of the city in failing to repair Eleventh cross-street in said city.

The city denied that it had been guilty of any negligence, and 'averred that the place where the accident happened had never been used for travel and had never been necessary for the use or convenience of the public, but was in an unfrequented part of the city, and that it was generally known that said street was unsafe and unfit for travel.

The evidence showed that Eleventh Street had never been improved or treated as a public way; that it was outside the inhabited portion of the city, and had never been used by the general public as a street or recognized as such by the city government, and tended to prove that neither the wants or convenience of the public, or of any of the inhabitants of the city, required that it should be kept in repair as a street; and it also tended to prove that it would cost a large sum to put that street in safe condition for use.

Upon this evidence the court instructed the jury, in substance, that if the point where the accident occurred was in a place designated and set apart as one of the public streets of the city for the purpose of travel, then it was the duty of the city to keep said street in a reasonably safe condition for travel, and that the city was liable for injuries occurring to persons or property in consequence of its failure to do so; and refused

an instruction asked by the city to the effect that if the street where the accident occurred was not needed for the use or convenience of the public the city was not bound to keep it in repair.

The only question in the case which we deem it necessary to notice arises out of the action of the court in regard to these instructions.

The charter confers on the city council power to improve and repair the public ways in the city, and counsel for the appellees insist that the duty to keep all the streets within the limits of the city in a safe condition results from the possession of the power. It has been held that when a public body is clothed with power to do an act which concerns the public interests, the execution of the power may be insisted upon as a *duty*, though the statute creating the power be only permissive in its terms, as where the statute declares that the act "*may*" be done, or that "it shall be lawful," "is authorized" to be done, etc. (Mayor, &c., v. Furze, 3 Hill, 612, and authorities cited; Huston v. The Mayor, &c., 5 Selden, 9 New York, 163.)

It has also been repeatedly held that power to improve streets is legislative, and may be exercised from time to time, as the wants of the corporation may require; and that the governing body of the municipality, and not the courts, is to judge of the necessity or expediency of its exercise. (McCormack v. Patchin, 53 Mo. 33; Macy v. Indianapolis, 17 Ind. 267.)

These two propositions are in apparent conflict with each other, and it seems to us that both are subject to qualification. Under certain circumstances, as is shown by many adjudged cases, a public body clothed with power to do an act, in the doing of which the public has an apparent interest, can neither be compelled to do the act nor be made liable for not doing it. And in another class of cases, equally large, it has been held

that, under other circumstances, such a body may either be compelled to do the act authorized or be made liable for injuries resulting from its failure.

The power is conferred for the benefit of the public, and, whenever the interests of the public require its exercise, it becomes the duty of the body possessing the power to act. This is clear. But how shall it be determined, in a disputed case, whether the public interests require the act to be done? The authorities show that this question of fact is sometimes to be decided by the courts and sometimes by those to whom power to do the act has been given. By what principle, then, are we to decide whether the case in hand falls within the one class or the other? whether this is a case in which the power to improve and repair the streets is to be exercised or not at the discretion of the city council, or is one in which the public has such an interest as to make it the duty of the council to exercise the power, and, upon their failure, to render the city liable in an action for any injury resulting to persons or property from the failure?

The rule which distinguishes the one class of cases from the other seems to us to be this:

When the omission to exercise the power given clearly appears to have resulted from neglect, or from a willful refusal to do that which the public interests plainly require, such omission will thus be shown not to be in consequence of the judgment of the body, in the exercise of its discretion, that the thing omitted was not necessary or expedient to be done. But when the omission to do the act in question may have resulted from the not unreasonable belief that it was unnecessary or inexpedient, then the decision of the body possessing the power is conclusive.

This distinction is necessary, in order to avoid the alternative of leaving such bodies wholly irresponsible, or of depriving them of all discretion in the discharge of their duties.

The application of this principle and the necessity for such a distinction may be well illustrated by this case.

It may be assumed that many of the streets in Henderson are so important to the convenience and comfort of the population of the city and of the general public that to allow them to be greatly out of repair would be an intolerable grievance, and it certainly will not do to say, because the power to repair these streets is legislative, that the city council has an uncontrollable discretion to repair them or not, as may suit its whims or caprices. None will maintain that such is the law. If they should fail to repair, they might be prosecuted and punished for failing to do so, and if persons or property were injured in consequence of their failure, the city would be liable.

As to such streets the courts, and not the city council, have the ultimate right to decide whether repairs were necessary or not. But whether the public interests require that streets in uninhabited or in very sparsely-inhabited parts of the city should be improved, the city council must be permitted to exercise its discretion, and its decision will be final in all such cases, because the courts will be unable to say that the omission resulted from negligence or a willful refusal to perform a duty, and not from the judgment of the council that such improvements were unnecessary or inexpedient.

If the city council had taken control of the street, and by improving or repairing it had invited the public to use it, the city would not be heard to say that it was not necessary as a street. Such action would show that the council did regard it as necessary, or at least as expedient, to have a street there for the use of the public.

But there was no evidence that Eleventh Street had ever been improved or repaired by the city, and the failure to do either should be treated as a decision by the council that the convenience and comfort of the public did not require it; and as there are no grounds for saying that the omission to

improve or repair was the result of negligence or of a willful refusal to perform a known duty, the court had no right by the instruction given to deprive the city council of the discretion given to it by the charter.

These views are sustained by the decision of the Supreme Court of Missouri in the case of Bassitt v. The City of St. Joseph (53 Mo. 290), where it was said that a city is not "required or bound to keep all of its streets in good repair under all circumstances. She is only bound to keep such streets and such parts of streets as are necessary for the convenience and use of the traveling public. . . There are streets or parts of streets in many cities which are not at present necessary for the convenience of the traveling public which will be brought into use by the growth of the city; or there may be streets that have more width than is necessary for present use or the requirements of travel. All that is required in such cases is that the city shall see that as the streets are required for use they shall be placed in a reasonably safe condition for the convenience of travel."

As long as the city keeps such streets as are needed by the public in safe condition it has neglected no duty in that regard which it owed to the public; and as it can only be made responsible in this case upon being convicted of a neglect of duty, we think the court erred in giving instructions to the jury and in refusing that asked by the city.

Wherefore the judgment is reversed, and the cause is remanded for a new trial upon principles not inconsistent with this opinion.