## City of Paducah v. Mallory, et al.

## Caldwell, et al. v. City of Paducah.

(Decided June 27, 1928.)

### Appeals from McCracken Circuit Court.

1. Dedication.—Evidence held sufficient to show dedication of street through property a part of which was outside of city at time of dedication, but which was later included within city boundaries.

2. Dedication.—Where owner of land divides it into building lots, designating streets and alleys between lots, making map thereof,

which defines streets and alleys through lots, it is a dedication of streets and alleys, although they have not actually been opened.

3. Dedication.—Where landowner has sold lots as bounded by streets and alleys shown on map, such conduct amounts to an immediate dedication of streets and alleys to use of purchasers and public.

4. Dedication.—Streets and alleys need not be accepted by city or town immediately on their dedication.

5. Dedication.—Dedication of streets need not be in writing, but anything that donor does, which clearly indicates that he dedicates streets to public, and subsequent acceptance by the public, completes act of dedication.

6. Dedication.—Where it is not shown that public has used street for five consecutive years, so as to create conclusive presumption, under Ky. Stats., sec. 3094, that street has been dedicated to city, city must establish dedication by proof.

7. Dedication.—Where one dedicates property to use of public, and thereafter retains possession of the property, he holds it as trustee for public, until it may be accepted by public in recognized manner.

8. Dedication.—Where one dedicating property for street and his heirs made no effort to withdraw dedication, but rather ratified it by selling lots and recognizing street in deeds, heirs did not hold property adversely to public, and they cannot claim, after acceptance of dedication by public, that streets may not be taken for use of public, and city, having accepted dedication, was entitled to free and uninterrupted possession.

W. V. EATON for plaintiff.

BEN S. ADAMS for defendants.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming in part and reversing in part.

This is an action under the declaratory judgment law, wherein the city of Paducah seeks a declaration of rights as to the property in a dedicated street, a part of which was outside of the city and a part within the city at the time of its dedication.

In 1890 there was a corporation operating in McCracken county under the name of the West End Improvement Company. It owned a body of land in the boundary of which were embraced a part of the city of Paducah and a part of the county of McCracken outside of the city of Paducah. The company had its property laid off into city lots, with alleys and streets. The property within the city was on Jefferson street, and lots on both sides of Jefferson street were laid off and sold. The lots outside of the city were laid off on Jefferson street extended; that is, Jefferson street was extended by the West

End Improvement Company through its properties a width of 100 feet, and the lots sold off by it fronted on Jefferson street as it would be when extended, and when the territory should be taken into and included in the boundary of Paducah.

The property belonging to the West End Improvement Company was a strip irregular in shape, extending from Nineteenth street, in the city of Paducah, to a point in the middle of the block west of what had been designated as Thirty-Third street. The subdivision of the West End Improvement Company was divided by a rectangular tract of land belonging to Dr. S. B. Caldwell. The maps of the West End Improvement Company were so prepared as to show an extension of Jefferson street through both parts of its subdivision and through the land of Dr. Caldwell lying between the two parts of the subdivision of the company. The street was shown on the map to be 100 feet wide. This map was exhibited by Dr. Caldwell to those interested in purchasing lots, which were for sale by the West End Improvement Company. He is described in this record as the president, or secretary and treasurer, or general manager of that company, and he had active supervision of the sale of the lots. He kept a map displayed on the wall of his office, which showed the subdivision, including lots, streets, and alleys, and which also showed the land belonging to him individually, designated as "Caldwell's Reservation." No lots were sold by him out of this reservation. Lots were sold out of the subdivision east of the Caldwell Reservation and west of the Caldwell Reservation. All of the lots so sold called for Jefferson street.

There is no dispute about the facts, and we find it to be true that Jefferson street was dedicated to the public, for the use and benefit of the public generally, and particularly for the use and benefit of those who purchased the lots sold by the West End Improvement Company. It is established by the evidence that Jefferson street was indicated on the maps and blueprints of the West End Improvement Company as running through the Caldwell property a distance of 1,264 feet 8 inches. It is established that Dr. Caldwell was familiar with the plats and maps, and that he was instrumental in the development of the subdivision of the West End Improvement Company, and that he was interested in it as an officer of the company, and probably more greatly interested because the development of the subdivision on both sides of his land would greatly enhance the value of his

property. This development of the subdivision had the effect of converting Dr. Caldwell's lots into property available for city lots, whereas it was woodland at the time. It is thus seen that Dr. Caldwell was much interested in the development of the subdivision, and there was ample consideration for his dedication of Jefferson street through his property to the public.

After the dedication of Jefferson street through the property of Caldwell, the street railway company operating in Paducah obtained a right of way along Jefferson street, in the city of Paducah; but Jefferson street ended at what was then Twenty-Fifth street. The railway company obtained a right of way from Dr. Caldwell and constructed its track and operated its cars over Jefferson street extended. This right of way was obtained from Dr. Caldwell prior to 1895. It is in the center of Jefferson street extended and is 20 feet wide. When the railway company laid its track, Dr. Caldwell built his fence along the right of way of the railway company on both sides of its track. As the right of way of the railway company was in the middle of Jefferson street, and as it was 20 feet wide, there was 40 feet on each side of the right of way which belonged to Jefferson street extended, if a street 100 feet wide was dedicated by Dr. Caldwell. The fencing done by Dr. Caldwell in 1895, or prior thereto, has been maintained, at least in a fair degree of preservation, to the present time.

A part of the fence, however, was set back to the street line when a part of the land of Dr. Caldwell on the north side of Jefferson street, and between Jefferson and Monroe streets, was acquired as a fair ground. The fence between the fair ground and the street railway track was located on the street line of Jefferson street extended; that is, the fence was set back to a point 40 feet from the right of way of the railway company. Dr. Caldwell died in 1907, leaving two children, S. B. Caldwell, Jr., and Mrs. Mary E. Mallory. These children were of lawful age, and they divided the property of their father, including the Caldwell Reservation, shown on the maps of the West End Improvement Company. In the division of this property they recognized the establishment and dedication of Jefferson street by their father as is shown by the deeds of partition. After the death of Dr. Caldwell, the fencing which he had erected remained as located by him after the partition of the property, although the deeds show on their face that Jefferson

street 100 feet wide was allowed to the public in accordance with the maps of the West End Improvement Company made many years before. S. B. Caldwell, Jr., died in 1916, leaving his widow, Mrs. Addie Caldwell, to whom he left his property for life, with power to dispose of it within her discretion. After she was authorized to dispose of the property, from time to time, she sold lots out of the Caldwell Reservation referred to, and in each instance she recognized that Jefferson street ran through the Caldwell Reservation, and her recognition of that fact is made to appear in the deeds which she executed. Mrs. Mallory made one sale out of that portion of the Caldwell Reservation which was allotted to her. That sale was in 1923, and she likewise recognized the dedication and existence of Jefferson street as shown on the maps mentioned.

At the time of the institution of this suit there was a strip of land on the north side of Jefferson street in the Caldwell Reservation, claimed by Addie Caldwell as stated, and which was under fence. This strip of land was 425 feet long, and 40 feet thereof was within Jefferson street. On the south side of Jefferson street there was a like strip of land 550 feet in length, which was also embraced in the original inclosure made by Dr. Caldwell. One hundred feet of the 550 feet was adjacent to the property of Mrs. Addie Caldwell, and 450 feet was adjacent to the property of Mrs Mary E. Mallory. The strips referred to were not included in the division of the property between the children of Dr. Caldwell, but, as said before, 100 feet in width, running a full distance of 1,264 feet 8 inches, was entirely omitted from that division between the children.

In 1926 the city of Paducah extended its boundaries so that the entire subdivision of the West End Improvement Company was included within the city limits. The city enacted the necessary ordinances for the improvement of Jefferson street as dedicated by Dr. Caldwell through his property. Mrs. Addie Caldwell and Mrs. Mary E. Mallory refused to surrender possession of the street to the city, upon the theory that there had never been any dedication by Dr. Caldwell, or, if there had been, they had acquired title to the property within the dedication by adverse possession. The lower court appears to have held that the dedication was made. Mrs. Addie Caldwell's claim to a part of the street was denied, upon the ground that she had recognized the ded-

ication as made by Dr. Caldwell when she sold a number of lots calling for the street line; but the court adjudged that Mrs. Mallory was entitled to the strip 450 feet long and 40 feet wide on the south side of Jefferson street by adverse possession.

The lower court was correct in holding that evidence was sufficient to show the dedication of Jefferson street through the property belonging to Dr. Caldwell. It has long been established by the decisions of this court that, when the owner of land divides it into building lots, designating streets and alleys between the lots, making a map thereof, which defines the lots and streets and alleys through the lots, it is a dedication of the streets and alleys, although they have not actually been opened. If the owner of the land has sold the lots as bounded by such streets and alleys, such conduct amounts to an immediate dedication of the streets and alleys to the use of the purchasers and the public. Schneider v. Jacob, 86 Ky. 101, 55 S. W. 350, 9 Ky. Law Rep. 382; Newport Pressed Brick & Stone Co. v. Plummer, 149 Ky. 534, 149 S. W. 905. When lots are purchased after such division of property into lots has been made, with a clear reference to the streets and alleys, such streets and alleys become at once irrevocably dedicated to the personal convenience and necessities of the purchasers, and not only to the purchasers alone, but to the public as well. Neither is it necessary that the streets and alleys be accepted by the city or town immediately upon their dedication.

In Creekmore v. Central Construction Co., 157 Ky. 336, 163 S. W. 194, this court held that a street dedicated to the purchasers and the public in a subdivision outside of the city limits automatically became a city street when the subdivision was taken into the city. In the late case of Volpenheim v. Westerfield, 216 Ky. 157, 287 S. W. 545, the court restated and approved the principles announced in former opinions on this point, as did also the court in the case of Morris v. Avondale Heights Co. et al., 218 Ky. 356, 291 S. W. 752, and again in the case of Morrison v. Town of West Point, 219 Ky. 397, 292 S. W. 1095.

The dedication does not essentially require that it be made in writing. Anything which the donor does which clearly indicates that he dedicates the thing to the use of the public and the subsequent acceptance by the public completes the act of dedication. It has frequently been so held by this court. The last case on the subject is that of Central Land Co v. Central City, 222 Ky. 103,

300 S. W. 362. To the same effect is the case of Congleton v. Roberts, 221, Ky. 712, 299 S. W. 579, and the case of Hedge v. Cavender, 217 Ky. 524, 290 S. W. 342.

Those claiming under Dr. Caldwell rely on the cases of City of Covington v. McDonald, 94 Ky. 1, 21 S. W. 235, 14 Ky. Law Rep. 817; West Covington v. Ludlow, 15 S. W. 353, 12 Ky. Law Rep. 783; Sanford v. City of Covington, 14 S. W. 497, 12 Ky. Law Rep. 450. These cases are easily distinguished from the cases we have cited, upholding the dedication of streets; but we shall not point out the distinction here, as it would serve no useful purpose. But they also rely on the provisions of section 3094, Ky. Stats. That section has no application to the question here. It provides that the unrestricted use of a street for five consecutive years by the general public constitutes a conclusive presumption that the street has been dedicated to the city. In such cases it would seem that no other proof is necessary. It is not shown that the public has used Jefferson street outside of the city limits for five consecutive years. Therefore it was necessary for the city of Paducah to establish the dedication by proof, which in our judgment it has done.

That leaves the question of adverse possession of the parts of the street fenced by Dr. Caldwell; that is, whether it could be held adversely to the public by him or his children. The evidence well establishes that his inclosure, and dominion over the street, together with that of his children, has been such as to vest the title in him, or those claiming under him, if the plea is available to him or them. Those claiming under him are in the same condition and have the same rights, as he would have, if he were living and making the claims which they now assert. It is the general rule that, where one dedicates property to the use of the public, and thereafter retains the possession of the property, he holds it as trustee for the public, until it may be accepted by the public in some recognized legal manner. Dr. Caldwell made no effort to withdraw the dedication which he had made, and neither have those claiming under him made any such effort. On the other hand. they have ratified by their acts the dedication which he made. The possession which they have held has not been adverse to the public, but has been with the acquiescence of the public. They have held the street until the public has now demanded it, and it is not in their power to say to the public, after acceptance of the dedication, that the street may not be taken for the use of the public. This question was

settled in the case of Elliott v. City of Louisville, 123 Ky. 278, 90 S. W. 990, 28 Ky. Law Rep. 967. In that case a dedication by a landowner was made in 1868. He, and those claiming under him, retained the possession of the property until 1895, when it was taken into the city limits of the city of Louisville. The defense of adverse posses-sion was interposed, but the court denied the right of those claiming under the donor, on the ground that he, and those claiming under him, held the possession as trustees for the public. In the late case of Hedge v. Cav-ender, supra, the same conclusion was reached.

The city having accepted the dedication, is entitled to have the free and uninterrupted possession of Jeffer-son street through the Caldwell Reservation, and the lower court should have so adjudged. The appeal of the city of Paducah from the judgment in favor of Mrs. Mary E. Mallory et al., is reversed for proceedings con-sistent with this opinion, but the judgment of the chan-cellor in the case of Mrs. Addie Caldwell et al. v. City of Paducah is affirmed.

Whole court sitting.