## City of Middlesboro v. Kentucky Utilities Company.

(Decided February 20, 1931.)

524

LOW & BRYANT, ED. SAMPSON and CHAS. A. WOOD for appellant.

GORDON & LAURENT, N. R. PATTERSON and W. E. CABELL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This equity action was begun by the appellant and plaintiff below, city of Middlesboro, filing its petition in the Bell circuit court against the appellee and defendant below, Kentucky Utilities Company, in which plaintiff averred that defendant was operating an electric lighting system within the corporate limits of plaintiff and using its streets, alleys, and public ways for that purpose without right, or without having obtained a franchise privilege to do so from the city under the provisions of section 164 of the Constitution or otherwise, and it prayed that the court so adjudge. If that could not be done, it then asked that defendant be required to carry out the terms of an alleged contract between it and a defunct corporation known as the Middlesboro Town and

Lands Company, made and executed on April 17, 1909, under which defendant sought to sustain its right and privilege to appropriate the streets for the operation of its electric lighting system as it was doing, and which the city had requested it to do, but which it failed and refused. That provision related to the fixing and adjusting of the rates to be charged the city and its inhabitants for electricity for both public and private purposes.

Defendant answered, denying that it was operating its plant within the city or using any portion of its streets for that purpose without a franchise to do so, though it admitted that it had never obtained such right from plaintiff in the manner provided by section 164 of our Constitution; but contended that it was obtained by mesne conveyance from its remote vendor, the Middlesboro Electric Light, Heat & Power Company and that the latter purchased it by deed from the Middlesboro Town Company in 1890, in which the city joined, and whereby such rights and privileges were granted in that inter parties contract to the grantee therein, which was a private corporation organized for the purpose, to use and appropriate the streets of plaintiff in operating an electric lighting system for a term of thirty years from that date on certain terms and conditions not required for the purposes of this case to be recited herein. It was further alleged that the Middlesboro Town Company later conveyed all of its title and right in and to the ground upon which the city of Middlesboro was established to the Middlesboro Town Lands Company, which was of date November 12, 1891, and it, on November 23, 1893, conveyed all of its interest in same to the Middlesboro Town & Lands Company. That the latter on April 17, 1909, as the successor to the Middlesboro Town Company, conveyed to defendant's predecessor in title an exclusive and perpetual right to use the streets, alleys, and public ways of the city of Middlesboro in the operation of its lighting system, and which the vendor therein had the right to grant under the following facts:

That prior to January 4, 1890, the Middlesboro Town Company owned a large body of land where the city of Middlesboro is now located and platted it into lots and streets, and on the day mentioned it acknowledged the plat, which was shortly thereafter recorded in the county clerk's office of Bell county, and by that act it expressly dedicated "to public use the streets, alleys,

roads and public ways laid off on said plat,'' but at the same time reserved to itself and successors in title complete control over the streets ''for the erection, building, laying and maintenance of public or private telegraph, telephone and electric wires, poles and lines of all kinds, or for public or private gas, or water pipes and mains of all kinds, and for street and other tramroads or railroads; or for cisterns, wells, pumps, fountains, sewers or drains, or for curbing, grading, making, paving, or macadamizing any or all such streets, alleys, roads, pavements or public ways, or for straightening creeks or water channels; or for making or maintaining any and all public or private improvements necessary or proper in the judgment of said Town Company, its successors or assigns for the said Town of Middlesboro or the citizens thereof the said Town Company not intending however, to bind itself to make any of said public or private improvements and the said Middlesboro Town Company does hereby declare that the said plat is the same to which reference has been made in all conveyances by it heretofore made.''

It was therefore averred and contended that the vendor in the 1909 contract, having succeeded to such perpetual right in the manner indicated, conveyed to defendant's predecessor (Middlesboro Electric Light, Heat & Power Co.), such perpetual and excluisve right which, as further alleged, became vested in the Middlesboro Town Company by and through its reservation referred to before the formulation and adoption of our present Constitution, and because of which section 164 of that instrument had no application, since it could not operate retroactively so as to impair the Town Company's alleged reserved right, or defendant's alleged contract right.

Plaintiff's reply contained some denials, and (a) attacked the sweeping reservations relied on as being contrary to public policy and void; and (b) that, long prior to the execution or acknowledgment of the reservations, and their recordation with the plat, the Middlesboro Town Company had sold thirteen hundred or more of its lots shown on the plat (and which also contained the streets in the future city of Middlesboro), and in the conveyances of such lots, some of which abutted upon every platted street, reference was made to both plat and street upon which the conveyed lots abutted, and that such plat was extensively circulated and exhibited to such

purchasers before the conveyances were made, and all of which was done by the then owner of the land as so platted; that the vendor of such lots, without any such reservations, or without any knowledge on the part of the purchasers that they or any of them would ever thereafter be made, not only made an unqualified dedication of the streets or public ways laid off on the plat from which such purchases were made for the benefit of the vendees in such deed as abutting owners, but likewise made a like dedication to the *public* of such platted ways, and that the vendor in such conveyances could not impair or curtail the complete dedication thus made by the reservation it attempted thereafter to make as a part of the later recorded plat.

Defendant moved to strike that paragraph of plaintiff's pleading from its reply, but which was not done at that time, and in a responsive pleading it denied the facts upon which the pleaded estoppel was based, i. e., that any lots had been sold abutting on platted streets and ways in the manner and with the effect alleged and contended for by plaintiff. Many demurrers and various motions were filed and made by the respective parties, as well as responsive pleadings, and, upon final submission on the pleadings and exhibits, the court struck from plaintiff's pleading the paragraph in the reply above referred to, relying upon the sale of lots by the Middlesboro Town Company from its plat *before* the making of the reservation relied on by defendant, in the manner hereinbefore outlined, and held that the reservation, in so far as it applied to the reserved right to use the streets for electric light purposes, was valid.

As a consequence thereof, the court held that defendant's predecessor under the deed or contract of April 17, 1909, hereinbefore referred to, obtained the exclusive and perpetual right to operate its plant in the city and to use its streets therefor, and that defendant through mesne conveyances had acquired that right. It was further adjudged: "That the fact that certain lots had been sold by the Middlesboro Town Company to individuals prior to the filing of the original plat and instrument of dedication above referred to, without any reservations in the deed conveying said lots, does not affect the validity of the reservation subsequently made in the instrument of dedication, and furthermore, the right, if any, to challenge the use by the defendant for the pur-

poses above indicated of the streets and alleys abutting said lots sold prior to the original dedication can be raised only by the individual owners of such lots and not by the public or the City of Middlesboro,'' and that there was no question of rates properly presented by the pleadings or the proof, and because of all of which conclusions a demurrer was sustained to the petition, and it was dismissed upon plaintiff's declining to plead further, and from which judgment it prosecutes this appeal.

The case in its various ramifications is most elaborately and learnedly briefed by counsel for both sides, and which necessarily covers many questions which, under the conclusion we have reached, it will not be necessary to determine, and the same is also true with many collateral questions to those discussed, and which are also not necessary to be determined for the same reason.

The first question presenting itself, but which we have not heretofore mentioned, is the right of the city to maintain the action; it being insisted by learned counsel for the defendant that it may not do so. But, when that insistence is analyzed, it will be found to rest upon the theory of counsel that, if the sale of lots by the Middlesboro Town Company in the manner hereinbefore outlined occurred before it acknowledged and recorded its reservations in the streets (appearing upon the plat from which such sales were made) amounted to any extent as a dedication, it was only to and for the benefit of the vendees in such deeds, or, at most, to only all abutting property owners on such public ways as shown by the plat, and that, inasmuch as there was then no such municipality as the city of Middlesboro and which did not come into existence until some time in August, 1890, by a special act of the Legislature enacted at its 1889-90 session (see chapter 347 of the Session Acts for that year), and which was after the reservations had been made and recorded, the public as represented by the later created city was bound by the reservation under which defendant claims its contested right in this case, and for which reason plaintiff, as the representative of the public, acquired no rights in and to the streets, except as modified by the reservations, and which has the effect to estop it from maintaining the action. If learned counsel are mistaken in the premise upon which that argument is made (i. e., that the city cannot maintain the action because of its coming into existence after the reserva-

tions were made and recorded), then it falls to the ground, leaving the city with the right to maintain the action if it could do so without, or in the absence of, the reservations. That it could do so, and that it is the only one who could proceed for such remedial relief as is here sought, there can be no question.

It will be observed that the *rights* in and to the streets sought to be preserved by the alleged wrongful invasion by defendant are *public* ones as distinguished from the *private* ones of abutting property owners, the latter of which may only be protected and righted by an individual action of the particular abutting owners whose property rights in and to the street are invaded. But, when rights therein appertaining exclusively to the public are involved, the cause of action for such invasion is exclusively in the particular governmental agency embracing the locality of the public way involved, and this court has so held whenever the question was presented. Some of the cases in which it was done are Cosby v. Owensboro & Russellville R. Co., 10 Bush, 288; Keystone Commercial Co. v. City of Maysville, 154 Ky. 239, 157 S. W. 25; City of Princeton v. Princeton Electric Light & Power Co., 166 Ky. 730, 179 S. W. 1074.

In the Cosby case the opinion said: "The entry (on the streets) by the railroad company was an entry upon the possession of the public. The right of action, if there be one, is in the municipal authorities representing the local public immediately interested in Lewis street." In the other two cited cases, and others referred to in the opinions, the same doctrine was approved without exception. The poles, wires, and other uses of the street incident to the maintenance and operation of the electric light plant would create nuisance, if their appropriation for such uses was without right, and this court has uniformly held in an almost endless number of cases that the action to abate such nuisances can be prosecuted *only* by the municipality or other governmental authority or agency representing the public and within whose boundaries the nuisance was created, as will be seen from our opinion in the case of Lee v. Macht, 235 Ky. 509, and numerous others cited in that opinion on page 513, 31 S. W. (2d) 906, 907. Therefore, if the city of Middlesboro after its organization succeeded to or acquired the right to administer and protect the theretofore acquired rights of the public in and to the public

ways within its corporate limits, it not only had the right to maintain this action, but it had the exclusive right to do so, and which brings us to a consideration of what we deem the decisive question in this case, and which is: The legal effect of the sale of lots by the Middlesboro Town Company abutting on streets laid off on its plat from which such purchases were made at a time when *no* reservations in and to the streets were made or claimed, and which we will now proceed to determine.

In the fourth edition of Elliott on Roads and Streets, volume 1, sec. 21, the text says:

"If an owner of land makes a plat of a city or town, and refers to streets, he must be taken to mean public urban ways in all that the term implies. He sets apart, by such an act, the land indicated as a street to all public uses to which a public urban way may be properly appropriated. The easement thus created is determined by applying to the word 'street' the signification assigned it by the law. If property on the line of a way designated as a street is acquired on the faith of the owner's act, he will not be permitted, as against the persons so acquiring the property, to defeat by his own act their right to have it regarded as a street with all the usual and appropriate incidents of such a public highway."

In chapter 5 of that most excellent publication, beginning with section 122 of the same volume, the learned author points out the various methods of dedicating public streets and ways, and the rights acquired thereby in favor of both the abutting owner and the public as represented by the local governmental agency having jurisdiction. In section 128 it is stated that:

"Dedication may be established against the owner of the soil by showing that he has platted the ground, representing streets and alleys on the plat, and has sold lots with reference to it, or by showing that he has adopted a map or plat made by public officers, or other persons, or by showing that he has sold lots describing them as bounded by a street or road . . . But, ordinarily, the sale of a single lot with reference to the plat will complete the dedication."

In the following section (129) it is pointed out that the owner after such dedicatory acts "cannot recall his dedication, for he leaves the streets to be opened by the proper local authorities at such a time as the public interest may require, and of this the local authorities are the judges." In section 132 of the same volume it is broadly stated, and fortified by a great number of cases in the appended notes, that such a dedication made in the described manner inures, not only to the vendee of an abutting lot, but to all other purchasers in the platted territory which go to make up the local public; and in section 127 the well-fortified text says: "A dedication, either statutory or common law (such as we are now considering), to a public corporation is not lost by changes in the form of the corporate government, nor by changes in its territorial boundaries. A dedication for the purposes of a public township road will not be lost to the public if a town or city is built up, and the road falls within its limits, nor will it be lost in cases where there is an extension of corporate limits so as to embrace county roads, nor where a village grows into a town or a town into a city. Towns, townships and cities are but trustees of the public, and, as in cases of ordinary trusts, the public trust is not defeated by a change of trustees. Public corporations of the classes mentioned are governmental subdivisions, and changes in their forms, powers and obligations do not deprive the public of their rights in public easements, nor in public property, such as school-houses, public squares and the like."

Discussing the rights acquired by the public flowing from common-law dedications, made in the manner now being considered, the text in 18 C. J. 58 sec. 43, says: "Where the owner of real property makes a plat of it and divides the land into lots and blocks intersected by streets and alleys, and sells any of the lots with reference to such plan, or where he sells with reference to the map of a town or city, in which his land is so laid off, he thereby dedicates the streets and alleys to the use of the public, unless it appears either by express statement in the conveyance or otherwise that the mention of the street was solely for purposes of description and not as a dedication thereof."

In the following section, on page 60 of the same volume, the reason for that rule is stated to be that by such acts the owner and dedicator induces the purchasers of

lots to believe that the public ways will be kept open for not only his use, but for all persons whomsoever and as members of the public they may use them, "and having acted upon the faith of the grantors implied representations based upon his conduct, he is equitably estopped as well in reference to the public as to his grantees from denying the existence of the easement, and from appropriating the land so dedicated to a use inconsistent with that represented by the map upon the faith of which the lots are sold." To the same effect is the text in 8 R. C. L. on pages 894, 895, secs. 18, 19, and pages 908, 909, sec. 33.

The same pertinent questions here involved, and discussed in the texts to which we have referred, were before this court in the recent cases of Newland v. Schriver, 230 Ky. 304, 19 S. W. (2d) 963, City of Paducah v. Mallory, 225 Ky. 692, 9 S. W. (2d) 1015, 1017, and others therein cited, and in which we approved that doctrine without reservation in the absence of expressly qualifying facts, none of which appear in this case. In the Mallory opinion the effect thereby produced upon the rights of the public in and to the streets was thus stated:

"In Creekmore v. Central Construction Co., 157 Ky. 336, 163 S. W. 194, this court held that a street dedicated to the purchasers and the public in a subdivision outside of the city limits, automatically became a city street when the subdivision was taken into the city. In the late case of Volpenheim v. Westerfield, 216 Ky. 157, 287 S. W. 545, the court restated and approved the principles announced in former opinions on this point, as did also the court in the case of Morris v. Avondale Heights Co., 218 Ky. 356, 291 S. W. 752, and again in the case of Morrison v. Town of West Point, 219 Ky. 397, 292 S. W. 1095."

The opinion in the Newland case, in passing upon the rights acquired by the public under dedication made in the manner now under consideration, said: "When a subdivision is made and mapped and the map filed for public record *or exhibited to members of the public in consummating* the sale of lots, it amounts to a dedication of all the lands shown thereon for public use, whether for streets, parks, or other public purposes, and the dedication is irrevocable even though no formal acceptance by the public authorities has been made (Rowan v. Town of

Portland, 8 B. Mon. 232), and even though the public is not bound to maintain the streets until such time as that duty may be undertaken. 18 C. J. 119, sec. 149; City of Henderson v. Sandefur, 11 Bush, 550; Mulligan v. McGregor, 165 Ky. 222, 176 S. W. 1129; Southern Ry. Co. v. Caplinger, 151 Ky. 749, 152 S. W. 947, 49 L. R. A. (N. S.) 660.'' (Our emphasis.) A vastly increased number of text authorities and adjudged cases from this and other courts upholding the legal principles of those expressly referred to, as applicable to the facts in this case, could be appended; but, since there are but few, if any, to the contrary we deem it unnecessary to lengthen this opinion by doing so.

From the law as so found to exist, these principles are clearly deducible: (1) That a public dedication of a street or way may be made by the dedicator conveying lots abutting on streets as appears from a plat made by him and by which the purchases were made, whether the plat has or not been recorded; (2) that it is incompetent for him to later withdraw such dedication either from his grantee or the public when so made and it has become effective; (3) that a later incorporated municipality, whose limits include a dedicated territory, succeeds to the rights of the prior public agency having jurisdiction of the territory and who administered the public's rights before such incorporation, upon the theory that the rights of the public are not to be defeated by any change or alteration in the administration of the public's local affairs; and (4) that any subsequent attempt to curtail or diminish such dedicatory rights in the streets or ways so dedicated, by ingrafting reservations or otherwise, is invalid, and of no effect. Those principles, when applied to the facts of this case, render the reservation relied on by defendant ineffectual, regardless of whether it would or not be valid if made and duly promulgated before the sale of any lots, and which conclusion renders it unnecessary to determine that very much mooted and extensively discussed question in this case. Such conclusions also eliminate the necessity of discussing or determining other collateral questions argued in the case and which we refrain from doing.

But it is strenuously insisted that plaintiff (city) jointly executed the contract with the Middlesboro Town Company, made in 1890, under which defendant's predecessor acquired the right herein contested, and that it is now estopped from maintaining this action; but whether

534

or not it could be so estopped, or whether the obligatory terms it assumed in that contract were sufficient for that purpose, need neither of them be determined, since that contract by its own terms expired in 1920. Also it should be stated that it is not necessary to determine whether defendant, as its learned counsel insists, obtained a perpetual franchise through the contract it made with the Middlesboro Town Land Company in April, 1909, since, from what we have hereinbefore said, that company as the successor of the Middlesboro Town Company, held at the time no such reserved rights in and to the streets that it could convey, for the reasons hereinbefore stated, and such questions thereby become immaterial and irrelevant.

The judgment appealed from not being in accord with what we have determined, it follows that it was and is erroneous and should be and it is hereby reversed, with directions to overrule the demurrer to the petition, and to also overrule the motion to strike that part of the reply relying upon the dedication of the streets through the conveyances of the Middlesboro Town Company prior to the acknowledgement and recording of the reservations, and for other proceedings consistent with this opinion.