## Watson v. Chesapeake & Ohio Railway Company.

(Decided March 13, 1931.)

32

WOODS, STEWART, NICKELL & SMOOT for appellant.

BROWNING & REED for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

W. F. Watson has appealed from a judgment dismissing his petition wherein he sought a judgment against the Chesapeake & Ohio Railway Company for $10,000, which he alleges represents the diminution in the market value of his property because of the damage done to it by the railway company's recently changing the grade, number, and location of its tracks on Railroad alley in Ashland, Ky., and thereby casting more water on his property, and destroying in part the ingress to and egress therefrom.

Watson's property has a southern frontage of 100 feet on Central avenue, it runs back with, and on the east side abuts on, Thirteenth street, about 107 feet, and the north end of it fronts and abuts on Railroad alley 100 feet. Railroad alley is 50 feet wide, and in it the Chesapeake & Ohio Railway Company now has, and for practically half a century has had, its tracks.

Almost directly across Railroad alley from Watson's property the Chesapeake & Ohio formerly had its passenger station, and it then had its tracks so planked or covered that access to Watson's property was easily had. Watson's complaint is that about the year 1925 the Chesapeake & Ohio moved its depot about 300 feet westwardly, took up the planking on its tracks near Watson's property, ballasted its tracks on Railroad alley with broken stone, built one additional track in the alley, and raised the grade of its tracks to some extent. The Chesapeake & Ohio had the right to move its depot, and Watson cannot complain of any deprecation of the market value of his property resulting solely from such removal.

The Chesapeake & Ohio had the right under the proof to construct in a proper way such tracks in this alley as are necessary for its use, but not without responsibility for resulting injury to the reasonable ingress to or egress from abutting property. The court in its instructions erroneously failed to tell the jury that anything could be found for Watson on that account. We cannot approve the instruction given, because in effect the court told the jury the rights of the Chesapeake & Ohio in this alley were exclusive, which is not true. See Stein v. C. & O. Ry. Co., 132 Ky. 322, 116 S. W. 733.

Nor could the Chesapeake & Ohio escape responsibility if it so changed the grade of its tracks in this alley as to destroy or materially affect the reasonable ingress to or egress from Watson's property.

The correctness of what we have said here depends upon the nature and extent of the rights of the Chesapeake & Ohio in this alley, and in order to correctly determine that, we must consider the history thereof as disclosed in the evidence.

It is there recited that the city of Ashland was laid out in the year 1854 by W. W. Westbrook, an engineer of the Elizabethtown & Big Sandy Railroad Company. It is evident a plat of the town was then made, but no copy thereof can now be found. The city is laid out with great uniformity, all of the blocks are 300 feet square, with alleys running through the center of them parallel with the river. These alleys were uniformly 15 feet in width. Thus there was in each block a plot of ground north of the alley 300 feet one way by 142½ feet the other which was divided into lots 142½ feet deep and 50

feet in width, and a similar plot of ground south of the alley, which also was divided into lots 50 feet in width. The blocks between Carter avenue and Central avenue were not exceptions to this rule. The alley between and parallelling these two avenues was sometimes called "Railroad Alley" and sometimes called "Railway Alley," and the evidence shows that originally it, like all other alleys in the city, was 15 feet wide. At some time, and its seems that now, no one knows when, how, or why, "Railroad Alley" was widened by adding to it from the lots on the south of it, 35 feet, so that "Railroad Alley" became 50 feet in width, and the plots of ground south of "Railroad Alley" and between it and Central avenue, were reduced to a size of 300 feet by 107½ feet, whereas they had formerly been 300 feet by 142½ feet. This alley seems to have always been called either "Railway Alley" or "Railroad Alley," both when it was only 15 feet in width and afterwards when it was 50 feet in width, and was used by the public generally as one of the public ways or thoroughfares of the city. The evidence shows there were many business houses and residences constructed fronting on this alley. There was put in evidence an ordinance of the city of Ashland adopted December 1, 1879, and reading thus:

"Whereas the Kentucky Iron, Coal and Manufacturing Company set apart Railway Alley for a way for railroads; and

"Whereas, the Elizabethtown, Lexington & Big Sandy Railroad Company have in contemplation the construction of their road by way of and through Ashland, and it being important to the City that the road shall be so built."

Whereupon the following ordinance was adopted:

"Be it ordained by the Board of Common Council of the City of Ashland, Ky., that the Elizabethtown, Lexington & Big Sandy Railroad Company shall have the right to construct and maintain a railway over and upon Railway Alley in the City of Ashland, the grade of the road to conform, as near as it can be made to do so, to the grades fixed for the cross streets; and the Railway Company to make and maintain convenient and sufficient approaches and crossings at all streets crossing the line of the railway.

"This grant to determine and be void unless the road shall be completed and in operation by 1st July, 1881."

The Kentucky Iron, Coal & Manufacturing Company, named in this ordinance, was shown to be the original town-site owner of the city of Ashland, and that the city was laid out by it.

There was also put in evidence the following which is taken from Deed Book 10, page 44, in the office of the clerk of the Boyd county court:

"At a meeting of the Board of Common Council of the City of Ashland, Boyd County, Kentucky, held on the 3rd day of May A. D. 1880, the following Ordinance was adopted towit:

"Be it ordained by Board of Common Council of City of Ashland Boyd County, Kentucky, that, in consideration of the Elizabethtown, Lexington, and Big Sandy Railroad Company running its road by the way of Ashland instead of by way of Chadwick's Creek, the perpetual and exclusive right is hereby given and granted to said Railroad Company to lay its tracks sufficient for its business, upon, through and along a certain Avenue or Alley called Railway Alley, between Bath Avenue [sic. Central] and Carter Avenue, and nearly parallel therewith, and across the various streets crossing said avenue, and to run cars thereon to be propelled by steam, or other motive power, at a rate of speed not to exceed ten (10) miles an hour.

"I do hereby certify that the foregoing is a true copy from the records of the proceedings of the Board of Common Council of the City of Ashland, Boyd County, Kentucky.

"See Book 'B,' Folio 146

"H. B. Brodess, Mayor"

It is mildly contended the railroad company has some sort of a right in this alley arising from a reservation of this alley for raliroad purposes, which it is claimed was made when the city was laid out by the original town-site owners; it being claimed that this alley was by such town-site owners set aside for railroad purposes, and that it, as the first actual operating occupant of the alley for such purposes, is therefore the owner thereof. A similar contention made in the recent case of

City of Middlesboro v. Kentucky Utilities Co., 237 Ky. 523, 35 S. W. (2d) 877, was considered by this court and disposed of adversely to the contention made by the railroad company in this case. What we said in that case applies here and is controlling.

The next question presented by this appeal involves a determination of the meaning of the expression, "The perpetual and exclusive right," used in the ordinance of May 3, 1880, set out above. In this phrase there is one word about which this controversy revolves, and that is the word "exclusive." The railroad company cites this expression, and solemnly asserts it means that no one but it has a right of any kind in this alley. That contention cannot be maintained, for whatever right the railroad company has in this alley is only such as it has derived by the ordinance aforesaid, and it could not by that grant from the city get any greater right than the city had.

> "The right of the authorities of a city, with legislative warrant, to permit the construction and operation through its streets of railroads . . . is limited only to the extent that the appropriation must not be incompatible with the ends for which the street was established. It must not deprive the persons living on the street of its reasonable use as a passway for foot-passengers, horsemen, and the vehicles in ordinary and general use. The right to such a use in the street is an incorporeal heredita-ment, legally attached to the ground continguous thereto—an incident to the title assured by law—a right of which the owners of such contiguous prop-erty cannot be deprived without compensation." Cosby et al. v. Owensboro & R. R. Co., 73 Ky. (10 Bush.) 288.

Taking these views on these questions, it follows that we must and we do hold that, if the market value of Watson's property has been diminished by what the railroad company has done in this Railway alley, its liability therefor is inevitable.

The rights of the railroad company in this Rail-road alley are not exclusive, the owners of property abutting on this railroad alley have a right to a use therein for reasonable ingress and egress to and from their property, and, of course, other incidental uses such as light, air, etc.

We discussed and determined a similar question in the recent case of Lee v. Macht, 235 Ky. 509, 31 S. W. (2d) 906, 909, and in that opinion we said this concerning the rights in a street of the owners of abutting proption.''

"He had an easement property right in and to the street only to the extent that his rights to air and light, and of ingress and egress, with, perhaps, others not necessary to mention, are not unreasonably interfered with by the complained-of obstruction."

The natural slope and drainage of Watson's property is north, towards the Ohio river. Railroad alley is immediately north of Watson's property, and of course, every elevation of that alley or everything that is put therein by which the flow of water towards the river is obstructed does a corresponding injury to Watson's property. Watson contended and established by his evidence that the railroad company had raised the grade of its tracks in this alley, and had built an additional track therein, and had thereby flooded his property and increased the quantity of water thereon. If that be true, and the market value of his property was injured thereby the railroad company must answer therefor. If it did injure Watson's property in this manner, such an injury was the result of a permanent structure, Wasioto & B. M. R. Co. v. Blanton, 160 Ky. 134, 169 S. W. 589: Chesapeake & O. Ry. Co. v. Stein, 142 Ky. 515, 134 S. W. 1169; Chesapeake & O. Ry. Co. v. Robbins. 154 Ky. 387, 157 S. W. 903; Chesapeake & O. Ry. Co. v. Blankenship, 158 Ky. 270, 164 S. W. 943; Louisville & N. Ry. Co. v. Conp, 179 Ky. 478, 200 S. W. 952.

There should have been no instruction upon temporary damage, as no such question was presented.

If by the exercise of ordinary care and at a reasonable cost Watson could have avoided any of the damage to his property which resulted from the acts of the railroad company, then it was his duty to take such steps as would avert or minimize his damage, but the proof here shows it would have required a substantial sum to have done this; hence no instruction should be given on that feature, and the measure of his recovery will be the difference. if any, between the market value of his property just before it was generally known the railroad company would build its additional track, and would raise the

grade of its then existing tracks and its market value just after it was done.

For the errors mentioned, the judgment is reversed. The whole court sitting.