J. B. Frazier, Jr., U. S. Atty., of Knoxville, Tenn., E. F. Smith, Asst. U. S. Atty., of Morristown, Tenn., and W. G. Beardslee and Fendall Marbury, both of Washington, D. C., for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

HICKS, Circuit Judge.

This cause was heard on the transcript of the record and was argued by counsel,

## CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. OF CHICAGO et al. v. CITY OF MIDDLESBORO, KY.
### No. 8030.

Circuit Court of Appeals, Sixth Circuit.

Jan. 11, 1940.

Rehearing Denied Feb. 16, 1940.

Squire Ogden, of Louisville, Ky. (T. M. Galphin, Jr., and Squire R. Ogden, both of Louisville, Ky., Stoll, Muir, Townsend & Park, of Lexington, Ky., and Gordon, Laurent, Ogden & Galphin, of Louisville, Ky., on the brief), for appellants.

A. Shelby Winstead, of Louisville, Ky. (Woodward, Dawson & Hobson and A. Shelby Winstead, all of Louisville, Ky., H. F. White, of Middlesboro, Ky., and Henry L. Bryant, of Pineville, Ky., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

ALLEN, Circuit Judge.

This appeal is from a decree of the District Court dismissing a bill in equity filed

by the trustees under a mortgage and deed of trust executed by the Kentucky Utilities Company, a private corporation operating in Middlesboro, Kentucky. The bill prays for a perpetual injunction against the city, restraining it from taking any action requiring Kentucky Utilities to remove its poles, wires and equipment from the streets of the city or requiring it to discontinue the operation of its electric plant and distribution system, or from taking any steps to dismantle or remove any part of the distribution system from the streets.

The controversy grows out of a decision of the Court of Appeals of Kentucky on February 20, 1931, City of Middlesboro v. Kentucky Utilities Co., 237 Ky. 523, 35 S.W.2d 877. In that action the city sought and obtained a judgment to the effect that the Kentucky Utilities had no franchise to use the streets of the city for the maintenance of its poles and wires. Appellants, trustees for the bondholders under a mortgage executed in 1919 upon all the property and franchises of Kentucky Utilities, were not made parties to the case in the state court. They claim that they have a valid lien upon a perpetual franchise owned by Kentucky Utilities for operating an electric distribution system in the city, and allege that unless enjoined the city will destroy their property rights. They also ask for a declaratory judgment to the effect that they have a lien upon a perpetual franchise of Kentucky Utilities within the city.

The case arises out of the following facts, which in the main are not in controversy:

The Middlesborough Town Company, a Kentucky corporation, was organized August 17, 1888. It owned all of the land upon which the streets of the city have since been constructed. The corporation had power "to buy, sell and deal in lands of all kinds, to purchase, survey, plat and locate town sites within or without the State of Kentucky, and to lay off the same in lots, parks, streets, alleys or public ways, to construct streets, alleys, bridges, parks, culverts or sewers, and maintain the same, to advertise, buy, sell or deal in town lots, to construct and maintain water works, gas works, electric light plants and apparatus and street railways."

The Town Company sold lots, all of the conveyances for which referred to a plat then unrecorded which dedicated to public use the streets, alleys, roads and public ways laid off therein. The plat was later recorded and the territory therein described was included in the city on its incorporation effective March 15, 1890. Together with the recorded plat, the company filed for record an instrument of dedication, dedicating the streets to public use, "however, subject to and with the reservation of such complete right and interest in, and control over, all said streets, alleys, roads and public ways, as may be proper and necessary in the judgment and at the option of the said Middlesborough Town Company, its successors or assigns, for the erection, building laying and maintenance of public or private telegraph, telephone, and electric wires, poles and lines of all kinds. * * *"

On August 11, 1890, the city council passed a resolution in which it gave the Middlesborough Electric Light, Heat & Power Company an exclusive contract to furnish electric light and power for thirty years within the city. The Town Company was also made party to the contract, which contained the following provision:

"Now, inasmuch as the Middlesborough Town Company, party of the third part, still holds the title to the streets, alleys and public ways of said city; save and except that it has laid off said streets, alleys and public ways for public use and recorded a plat of the same, expressly, however, reserving control of said streets, alleys and public ways, for the purpose of providing for Water Works, sewers, street cars, lights and other public improvements; and the first party, the city of Middlesborough, being lately incorporated under the laws of Kentucky, and having assumed control and direction of all public improvements in said city, now the party of the third part, in consideration of the premises, does join in this contract and agree to, and ratify the same and binds itself whenever called upon by the party of the second part, to convey, transfer and set over unto the party of the second part by proper deeds of conveyance the streets, alleys and public ways of said city, so far as may be necessary to carry out the terms of this contract."

By mesne conveyances which are not in question here, Kentucky Utilities became the owner of the franchises and electric system formerly owned by the Town Company, and upon October 1, 1919, executed a mortgage, properly recorded, by the terms of which it conveyed to the trustees, predecessors of appellants, a lien upon the property, distribution system, and all fran-

chises and easements belonging to Kentucky Utilities. Bonds were issued and sold after the execution of the mortgage.

■ Appellants claim that since they were not parties to the action in the state court, the substantial security right of the trustees in the franchise was not and could not be destroyed by those proceedings, and that the decision in the state court is not controlling here. So far as the right to be heard in the instant action is concerned, the question has been conclusively determined by Chase National Bank v. City of Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894. It was there held in a case brought by a mortgagee to enjoin a city from destroying or removing poles, wires and equipment, or enforcing a judgment of ouster theretofore secured in the state court against the mortgagor, that a decree against the mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made party to the proceedings. 291 U.S. page 438, 54 S.Ct. 475, 78 L.Ed. 894. However, the fact that the suit is properly brought by the mortgagee in the District Court does not relieve appellants of the obligation to set forth a cause of action, and if they have not done so, the bill was properly dismissed. The gravamen of the action is that Kentucky Utilities claims a perpetual franchise to use the streets of the city, upon which appellants have a lien. Assuming, for the purposes of this case, that the facts alleged in the bill are true, if Kentucky Utilities is not shown to have such perpetual franchise, the decree must be affirmed.

Appellants ground their claim upon the reservation in the dedication of the Town Company, the contract of 1890 executed by the city, and estoppel against the city.

The reservations in the dedication of the Town Company were considered in City of Middlesboro v. Kentucky Utilities Co., supra, and the court there held [237 Ky. 523, 35 S.W.2d 881]:

"(1) That a public dedication of a street or way may be made by the dedicator conveying lots abutting on streets as appears from a plat made by him and by which the purchases were made, whether the plat has or not been recorded; (2) that it is incompetent for him to later withdraw such dedication either from his grantee or the public when so made and it has become effective; (3) that a later incorporated municipality, whose limits include a dedicated territory, succeeds to the rights of the prior public agency having jurisdiction of the territory and who administered the public's rights before such incorporation, upon the theory that the rights of the public are not to be defeated by any change or alteration in the administration of the public's local affairs; and (4) that any subsequent attempt to curtail or diminish such dedicatory rights in the streets or ways so dedicated, by ingrafting reservations or otherwise, is invalid, and of no effect. Those principles, when applied to the facts of this case, render the reservation relied on by defendant ineffectual, regardless of whether it would or not be valid if made and duly promulgated before the sale of any lots, and which conclusion renders it unnecessary to determine that very much mooted and extensively discussed question in this case. Such conclusions also eliminate the necessity of discussing or determining other collateral questions argued in the case and which we refrain from doing."

■ This holding is binding upon us if it is a declaration upon questions presented here. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Appellants contend that the state case turned upon the fact that lots had been sold by Middlesborough Town Co. according to the plat prior to the filing of the instrument of dedication embodying the reservation, and that this case does not present the same facts. But the petition incorporates by reference and relies upon the instrument of dedication, which states that "the Middlesborough Town Company does hereby declare that the said plat is the same to which references have been made in all conveyances by it heretofore made." As the appellants' claim is derived through the Middlesborough Town Company, this statement is binding on appellants and it shows that conveyances had been made by the Town Company by reference to the unrecorded plat prior to the filing of the instrument of dedication together with the plat. This is the precise transaction presented in City of Middlesboro v. Kentucky Utilities Co., supra. That decision is binding here, and the reservation is of no legal effect. A similar declaration was made in Watson v. Chesapeake & Ohio Ry. Co., 238 Ky. 31, 35, 36 S.W.2d 641, and in Chesapeake & Ohio Ry. Co. v. City of Bellevue, 239 Ky. 61, 38 S.W.2d 943.

Appellants contend that the record shows that the distribution system was constructed prior to the filing of the instrument of dedication, but it is not shown that this system was constructed prior to the sale of the lots. If such is the fact, it was incumbent upon appellants to allege it precisely.

Nor did the agreement of August 11, 1890, create a perpetual franchise. This agreement did not attempt to convey a perpetual franchise to the Town Company, and the Town Company received nothing therefrom. It did purport to convey a franchise for thirty years to the Middlesborough Electric Light, Heat and Power Company. Therefore appellants' contention on this point must fail, for only that which is granted in clear and explicit terms passes by the grant of property, franchises or privileges in which the Government or the public has an interest. Coosaw Mining Co. v. South Carolina, 144 U.S. 550, 562, 12 S.Ct. 689, 36 L.Ed. 537. A municipal corporation, "when exerting its functions for the general good, is not to be shorn of its powers by mere implication. If, by contract or otherwise, it may, in particular circumstances, restrict the exercise of its public powers, the intention to do so must be manifested by words so clear as not to admit of two different or inconsistent meanings." Knoxville Water Co. v. Knoxville, 200 U.S. 22, 34, 26 S.Ct. 224, 228, 50 L.Ed. 353.

Also the city was not then empowered to grant franchises of any duration, for in 1890 the legislature had not delegated such power to municipalities. In the absence of express legislative authority, the city could not confer a franchise. Covington Street Ry. Co. v. City of Covington, 9 Bush, Ky., 127, 129; Bateman v. City of Covington, 90 Ky. 390, 392, 14 S.W. 361; Commonwealth v. City of Frankfort, 92 Ky. 149, 17 S.W. 287; East Tennessee Telephone Co. v. City of Russellville, 106 Ky. 667, 669, 51 S.W. 308.

However, the charter of the city provided:

"§ 98. Public ways, as used in this act, shall mean all public streets, alleys, sidewalks, roads, lanes, avenues, highways and thoroughfares, and the same shall be under the exclusive management and control of said city, with powers to improve them by original construction or to re-construct them, as may be prescribed by ordinance."

Appellants claim that this provision includes the power to grant franchises, relying upon Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389, and Covington v. South Covington & Cincinnati Street Ry. Co., 246 U.S. 413, 38 S.Ct. 376, 378, 62 L. Ed. 802, in which the Supreme Court held that similar provisions in a charter and in an ordinance authorized the city to grant a franchise. But the Supreme Court in the latter case stated:

"No decision of the State Court is brought to our attention that calls for any hesitation in following the authority of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389, and pronouncing the authority complete."

We think that under the rule of Erie R. Co. v. Tompkins, supra, the dissenting opinion in the Covington case, supra, has now become the law, for it cites and follows the Kentucky decisions. It points out that in Louisville City Ry. Co. v. City of Louisville, 8 Bush, Ky., 415, the highest court of Kentucky, construing the charter of the city of Louisville granting jurisdiction over the streets similar to that granted by the Covington charter, declared:

"Under the general legislative power of the municipal government to control and regulate the use of the streets of the city, it could not grant to any person or corporation the right to lay down a railway in a street."

The same rule is laid down in Covington Street Ry. Co. v. City of Covington, supra, and Bateman v. City of Covington, supra.

As stated in Ruttle v. City of Covington, 10 S.W. 644, 10 Ky.Law Rep. 766, it is clear that under the general power to control streets, sidewalks, etc., a municipal legislature cannot grant the right to a corporation or individual to appropriate and use the streets of a town or city for any purpose not contemplated by the legislature when the charter was granted. This declaration was approved in Louisville & Nashville R. Co. v. City of Louisville, 131 Ky. 108, 113, 114 S.W. 743, 24 L.R.A.,N.S., 1213.

Since the city had no authority to grant franchises in 1890, obviously the agreement made in that year creates no franchise. In 1891 the Constitution of Kentucky was amended to provide that a fran-

chise may not be granted for a term exceeding twenty years. Const.Ky. § 164.

■ Nor can estoppel arise here against the city. After it was incorporated, it granted an exclusive thirty-year franchise to the Middlesborough Electric Light, Heat & Power Company, and occupation of the city streets by that company and its successors, including the Kentucky Utilities Company, up to June, 1928, was under agreement with the city. The city's action against Kentucky Utilities was filed Dec. 28, 1928. Neither the payment of a franchise tax (Cumberland Telephone & Telegraph Co. v. City of Calhoun, 151 Ky. 241, 151 S.W. 659) nor the expenditure of money, extensive financing and the rendering of service over a long period of years establish an estoppel. City of Princeton v. Princeton Electric Light & Power Co., 166 Ky. 730, 179 S.W. 1074.

The decree is affirmed.

### On Petition for Rehearing.

Upon petition for rehearing, appellants urge with additional emphasis points raised and considered in the original hearing, but not discussed in the opinion. They contend that under section 10, subsection 30, of the charter of the city, the city was empowered on August 11, 1890, to grant a perpetual franchise. The provision reads as follows:

"The common council may grant the right of way over the public streets or other public grounds of the city to any railroad company or street railroad company, for such time, and in such manner, and on such conditions, as to them may seem proper, and shall have a supervising control over the use of same; and shall regulate the speed of cars, signals, and fare on street cars, and, under like condition and supervision; may grant the right of way that may be necessary to gas companies, water companies, electric light companies, telephone companies, and telegraph companies, or any like companies."

Counsel did not at the hearing, nor do they now, cite any Kentucky decision which construes the above provision or sheds light upon its meaning.

■ This provision does not in terms delegate to the city the power to grant franchises of any duration. The powers granted to the council with reference to railroad companies or street railway companies are much more specific and sweeping than those granted with reference to electric light companies. It was empowered to grant electric light companies only "the right of way that may be necessary." Since the term "right of way" is used earlier in the same section with reference to railroad companies and street railroad companies, we assume that it is used in the same legal sense. A right of way for a railway company is an easement. Mammoth Cave Nat. Park Assn. v. State Highway Commissioner, 261 Ky. 769, 775, 88 S.W.2d 931, and cases there cited; Laurel County v. Howard, 189 Ky. 221, 224 S.W. 762; Barton v. Jarvis, 218 Ky. 239, 291 S.W. 38. An easement is not a franchise, but is an interest in land.

It may be said that this is a tenuous distinction. Certainly if a municipality authorized to issue franchises, in accordance with the formalities prescribed by law, grants a specific right of way in the streets for the operation of a utility business, this is generally considered to be a special franchise. But this is not the question confronting us here. The question is whether subsection 30 of section 10, which merely gives the city permissive authority to control its streets with reference to their use by private utilities, delegates to the city the sovereign power to issue franchises.

■ The words "that may be necessary" do not aid appellants. They embrace no time element, and we infer that they relate to the kind of easement or right of way to be acquired as in the laying of pipes in the streets or in the erection of poles and wires. The logical explanation for the peculiar wording of the provision is that the legislature wished to confer upon the council merely the power to grant rights of way "as may be necessary" in the streets and public ways, according to the local needs, and that the council was not given the power to grant a franchise.

■ We need not consider further the nature of this provision, whose ambiguities, if any, will be resolved in favor of the public. In addition, the power conferred under section 10 of the charter was required to be exercised "by ordinance." This provision was mandatory. Craft, Mayor v. Richie, 225 Ky. 652, 9 S.W.2d 986; Russell v. Bell, 224 Ky. 298, 6 S.W.2d 236. In Massey v. City of Bowling Green, 206 Ky. 692, 268 S.W. 348, relied on by appellants, the resolution in question seems to have been enacted and to have had the identical effect under the charter as an ordi-

966

nance. This was not the case under section 7 of the charter of the City of Middlesborough, which provided that publication of an ordinance should be made before any ordinance is enforced, but contained no such provision as to resolutions. All of the reasons for maintaining the distinction between resolutions and ordinances which are usually applied in these cases apply with fuller force when the question involved is that of the city's power to grant a perpetual franchise. In Kentucky, even when a city has authority to grant a franchise, under Section 164 of the Constitution, the passage of a mere resolution permitting a utility to occupy the streets does not confer a franchise. Cumberland Telephone & Telegraph Co. v. City of Calhoun, 151 Ky. 241, 151 S.W. 659.

The petition for rehearing is denied.