## Potter et al. v. Mullins.

(Decided March 2, 1937.)

JOE HALL and NAPIER & NAPIER for appellants.

S. H. SUTHERLAND and HARRY L. MOORE for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Joe Potter and others brought this suit against Ellen Mullins to be adjudged a 16-foot roadway over land claimed by her, and to enjoin the obstruction of the roadway. The appeal is from an adverse decision.

William Potter owned a large tract of land in Letcher county on Cane branch of Elkhorn. On December 14, 1901, he conveyed to his son, appellant Melvin Potter, a portion of the land lying on the left-hand side of Cane branch going up. On the same day he conveyed to his daughter, Ellen Mullins, a 75-acre tract of land on the right-hand side of Cane branch going up. On June 12, 1902, William Potter conveyed all the rest of his land except 50 acres to C. S. Nield. He also conveyed to Nield all the minerals under the tract of land theretofore conveyed to Ellen Mullins. At the same time he granted to Nield a 16-foot roadway along the branch that now runs through the land reserved. The deed provided for an accurate survey, and the payment of the balance of the purchase price on completion of the survey. On October 31, 1902, Nield conveyed the same property to the Federal Coal & Coke Company, which agreed to assume and pay the unpaid purchase price. Following the transaction there was litigation which resulted in a compromise. On July 5, 1906, William Potter executed to the Federal Coal & Coke Company a deed which, after referring to the deed to Nield, and Nield's deed to the Federal Coal & Coke Company,

recited that the following is the correct description of that part of the said boundary of land conveyed to (by) the said parties of the first part by (to) Ellen Mullins by deed dated December 14, 1901, and recorded in the Letcher county clerk's office in Deed Book V, p. 40. The description called ''Beginning at a stake in Cane Branch,'' and contained several calls for stakes in Cane branch and running with Cane branch.

William Potter died in the year 1919 or 1920, leaving eight children, including appellants and appellee.

Melvin Potter deposed as follows: While his father owned the land he dedicated a roadway between his land and Ellen Mullins'. Ellen Mullins and her son-in-law had moved out some wire and rail fence and obstructed the road. Ellen's deed never included the roadway. The road claimed to be obstructed was above his place. William Potter dedicated the land, that is, he never deeded it away to anybody. He left the land between Ellen Mullins and the branch a roadway. The deeds were made at his house, and his father said that he would never deed the road away to anybody. Sam Newsom, who married into the Potter family, knew William Potter. After William Potter made the deeds to Melvin and Ellen Mullins he pointed out to witness the line of the deed. The line of Ellen Mullins' deed as pointed out to him ran to the foot of the hill. During the last few years some fencing had been done on the roadway. Henry Deal prepared the description for the proposed roadway. According to him the old roadway was in the creek part of the way, and on the opposite side of the water from the proposed roadway. Some time before, he had been over the proposed roadway and noticed some fencing and a building. The old building was not occupied. The deed of Ellen Mullins did not include any part of the proposed roadway. When he was there, he noticed that there was a pathway where people had walked and possibly on a small portion where horses had traveled near the lower end of the strip. The road was not wide enough for a wagon or an automobile. After N. E. Rierson was duly sworn it was agreed that his evidence would be the same as Deal's. Being recalled Melvin Potter testified that he got the description of the roadway set out in the petition from the survey made by Henry Deal and Mr. Rierson. Rierson being recalled testified that the descrip-

tion of the proposed roadway was not a description of the present road up Cane branch, and the present roadway up Cane branch never touched that description at any place.

According to Ellen Mullins the deed to her was prepared and signed at her house. Her house was about 25 or 30 feet from Cane branch. Just as soon as the deed was made they built a fence just as close to the branch as they could and cleared the field. After that they tended the land in corn and truck patches. She had always claimed the land to the creek. When the land was not cultivated it was pastured. The path leading up Cane branch is on the right-hand side going up until it reaches Melvin Potter's house; then it crosses the branch and goes to the left. The witch-hazel tree mentioned in the deed as a corner was on the bank of Cane branch. The rock is right to the branch. The walnut tree is 5 or 6 feet from the branch. There was a fence on the right side of Cane branch going down opposite her property, and a good road between the branch and the fence. She never heard her father say anything about reserving or dedicating a road through her property. On cross-examination Ellen Mullins stated that the hornbeam was 3 or 4 feet from the branch. Some of the foot of the hill on her farm was right in the branch. She had never measured the distance of the trees or the little house on her land from the branch. According to Martha Vanhoose, a daughter of Ellen Mullins, her father and mother had claimed the land next to the creek. About 25 years ago there was a rail fence next to the creek. Her father had a shop between the foot of the hill and the creek. The rock mentioned in her mother's deed was right on the edge of the branch. The hornbeam is about 10 feet from the branch. It is about 15 or 20 feet from the walnut tree to the branch. The fence adjoining the creek was all the way through her mother's farm. There was a pathway part of the way about 2 feet from the creek, and only 3 or 4 feet wide. It was about 30 feet from the front of her mother's house to the creek. From the foot of the hill it was about 8 feet to the creek. In his second deposition Melvin Potter deposed that the hornbeam was 12 or 15 feet from the creek, and the rock referred to in the deed was also 12 or 15 feet from the creek, and the walnut 15 or 16 feet from the creek. The original fence ran with the

line, but the new fence is much closer to the creek. Sam Newsom also gave a second deposition in which he stated that the objects called for were several feet from the creek. Joe Potter also deposed to the same effect.

Though objections and exceptions were filed to the evidence of Melvin Potter concerning conversations and transactions with his father then deceased, yet as the exceptions were never acted on by the trial court, and the depositions were read and heard at the trial without further insistence on the exceptions, the exceptions will be deemed to have been waived. Hayes v. Cyrus, 251 Ky. 411, 65 S. W. (2d) 59. We shall therefore consider the evidence of Melvin Potter. Not only is he contradicted by Ellen Mullins as to the place where the deeds were prepared, but in view of the surrounding circumstances his evidence is not very persuasive. If William Potter was so determined to establish a roadway for the benefit of his children or the public in general, and not deed it away, the natural thing for him to have done would have been not to leave the matter to the recollection of a son, but to draw the deeds in such a way as to make his intention clear. But even if we accept Melvin Potter's evidence as true, there remains the question whether the language of William Potter was sufficient to dedicate a 16 foot roadway through the land. It is true that a dedication of real property to the public use may be made by mere verbal declarations, if accompanied by such acts as are necessary for that purpose. But to make a valid dedication an intention to appropriate the right to the general use of the public must exist. If it confer a right of way, the way becomes a common highway and is not a private passway. A private passway cannot be created by dedication. So when the appropriation is for the use of particular persons only, and is made under circumstances excluding the presumption that it was intended for public use, it will not amount to a dedication. Hall v. McLeod, 2 Metc. 98, 74 Am. Dec. 400. Not only did the circumstances accompanying the statement of William Potter raise the presumption that a private passway was contemplated, but there was an entire absence of acts showing the contrary. The proposed road was not in existence at that time. It was not granted, reserved, or described in any deed. It was not shown or referred to in any map, plat, or other instrument. In

the conversation nothing was said about the public. Indeed the alleged dedication was not accepted by the public by user or otherwise. It follows that there was no dedication to the public use. There being no dedication to the public use, and no grant nor reservation of the roadway for the benefit of appellants, and no adverse user for a sufficient length of time to raise the presumption of a grant, it follows that appellants failed to establish their right to the roadway.

But the argument is made that Elen Mullins' deed does not include the roadway, and she is not in a position to interfere with appellants in its use. In this connection attention is directed to the fact that the trees and objects called for in Ellen Mullins' deed are a few feet from the Cane Run branch. In the first place the deed conveys a tract of land "lying and being in Letcher County and State of Kentucky, on the Cane Branch, a tributary of Elkhorn Creek and bounded as follows, to-wit:" Of the calls in the deed one is "thence about 30 yards up the Cane Branch to a rock," and another "thence up the rite hand side of the branch to a rock." In the next place it is a rare thing that trees or other objects used as corners for a survey are found right in the edge of the water, or a few inches therefrom, and resort is often had to objects on the bank of the stream though they may be a few feet distant from the stream. Not only so, but 30 years may make a slight change in the location of the corners with respect to their distance from the streams. However this may be, the description at most is merely ambiguous, and we think the intention of William Potter to convey to Ellen Mullins the entire 75-acre tract up to the creek clearly appears from the deed which he executed on July 5, 1906, to the Federal Coal & Coke Company. That deed recites that "the following is the correct description of that part of said boundary of land conveyed to Ellen Mullins," and the land is described as "Beginning at a stake in Cane Branch," and the description contains several calls for stakes in Cane branch and running with Cane branch. Of course Melvin Potter's evidence as to the purpose or construction of the deed is entitled to but little weight. It appears that there was litigation and a compromise was effected. One of the purposes of the deed was to give a correct description of the land conveyed to Ellen Mullins. In view of the ambiguity in the deed to Ellen

Mullins, the deed from William Potter to the Federal Coal & Coke Company, giving the correct description of the land conveyed to her, is entitled to more weight than the hazy memory of some witness. If he were here today it would be strong evidence of what he intended to convey to his daughter, and the evidence is equally available against appellants who claim through him.

Judgment affirmed.