# KENTUCKY WEST VIRGINIA GAS CO. et al. v. WOODS et al.

## No. 8090.

Circuit Court of Appeals, Sixth Circuit.
Feb. 16, 1940.

George B. Martin, of Catlettsburg, Ky., and Combs & Combs, of Prestonsburg, Ky., for appellant Kentucky West Virginia Gas Co.

Howard & Mayo, of Prestonsburg, Ky., for appellant Elkhorn Coal Corporation.

Joe Hobson, Edward P. Hill, Jr., W. W. Burchett, and W. C. Goble, all of Prestonsburg, Ky., for appellees.

Before HICKS, ALLEN, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of consolidated actions to quiet title brought by appellees, Preston Woods and the heirs of James Boyd, who claim ownership in fee of the two tracts of land involved. The appellants claim ownership of minerals underlying the real estate. The District Court found that appellees were entitled to the relief prayed for, and entered a decree adjudging the tracts of land free of any claim of the appellants to the oil, gas and minerals thereunder.

The case arises out of the following facts:

Prior to February 3, 1897, John W. Woods owned in fee 196.80 acres of land in Floyd County, Kentucky, and wished to settle his son, Preston Woods, and his son-in-law, James Boyd, upon two tracts of land included therein. Preston Woods and Boyd had cleared, fenced, and cultivated their respective tracts. Preston Woods built a house upon his tract, and James Boyd built a barn upon his boundary line. Boyd's house, doubtless by some error, was located upon the lands of John W. Woods. February 3, 1897, John W. Woods and his wife gave Preston Woods and James Boyd each a title bond for his tract of land.[1] The title bonds were not acknowledged, and were lodged for record July 28, 1931. In 1925 John W. Woods and his wife gave deeds to Preston Woods and to James Boyd for their respective tracts. The Preston Woods deed was recorded in 1925, but the James Boyd deed was not recorded until 1931.

Preston Woods occupied his house until 1912, and Boyd his until 1926. After they moved away each continued to cultivate, to use for pasture, and to exercise dominion over the land.

---

[1] The title bonds are substantially the same. That given to Preston Woods reads as follows:

"Know all persons by these presents that We, John Wood and Manervy Wood, his wife, are held and firmly bound to make a deed to Preston Wood in the sum of $250.00 for which $235.00 has been paid. Said land lying on Jarrell Branch on Cow Creek Floyd Co. Kentucky *beging* with James Boyds line and with said to the top of the ridge and around the *hed* of the left branch to opposite the *begining* thence a *strate* line to the *begining*."

. On November 20, 1901, John W. Woods and his wife agreed with the Ohio and Big Sandy Land Association to convey to it all of the mineral rights in their land. The contract was negotiated by Newt Harris, an agent of the company. The company procured a title abstract and had a survey made which included the boundary of the 196.80 acres, and upon April 23, 1903, Woods and his wife executed a deed to all of the minerals underlying the entire 196.80 acres in favor of the Northern Coal and Coke Company, assignee of the Ohio and Big Sandy Land Association. Appellants are owners of rights alleged to have been derived by mesne conveyances through the deed to the Northern Coal and Coke Company.

Preston Woods and Boyd did not know that the deed covered their tracts of land. Neither appellants nor their predecessors knew of the title bonds given by John W. Woods and his wife to Preston Woods and Boyd. No improvement was done on this tract until 1931 when a road was built preparatory to drilling a gas well. Appellees assert that this was the first notice they had that others claimed to own the mineral rights in their land, and these suits to quiet title, later consolidated, were filed August 11, 1931. Many witnesses who might have explained these matters, including Newt Harris, John W. Woods and his wife, and the managers and attorneys for the Ohio and Big Sandy Land Association in charge of these transactions, died prior to 1931.

Newt Harris lived in the vicinity of Cow Creek, where the land in question was located, and was the soliciting agent who negotiated the purchase of the mineral rights for the company in this territory. G. W. Adams, who took the acknowledgment of the deed from John W. Woods and his wife to the company, said that he "heard that Newt Harris took the mineral contract from John W. Woods and my recollection is that Newt Harris took the acknowledgment." Harris signed the deed as a witness. Preston Woods testified that Harris was trying to get everybody's land, and that "he talked to me and Jim Boyd and we both told him that we weren't going to sell, that they might want to drill right where our house stands, and he said it wouldn't cause us any trouble." He further testified that "Newt Harris came up and told me that he wanted to lease my land, and said, if I would, it would never cause me any trouble. My brother-in-law said

he wouldn't take it that they might want to drill right where my house is. We just never did." He also stated: "Newt Harris come there twice and tried to get my mineral."

On cross-examination by the attorney for the company, the following testimony was given:

"Newt Harris was the man who made the trade with my father for the minerals.

"Q. 203. How do you know it was? A. He was up there and wanted mine at the same time, it was Newt Harris.

"Q. 204. How did you know he wanted yours at the same time? A. He came up there and said 'I have your father's and the whole branch except these two forks.' I do not know what company Newt Harris was representing."

 The appellants object that this testimony is incompetent and inadmissible under the Kentucky statute. The objection is well taken with reference to all except that elicited on cross-examination by appellant's attorney.

Section 606, Ky. Civil Code of Practice, sub-section 2, in its material portions, provides that "no person shall testify for himself concerning any verbal statement of, or any transaction with, or any act done or omitted to be done by * * * one who is * * * dead when the testimony is offered to be given * * *." The succeeding exceptions have no application here. This statute and the adjudications thereunder (Cf. Bastin v. Givens' Adm'x, 170 Ky. 201, 185 S.W. 835) render inadmissible the declarations of Newt Harris repeated by Preston Woods in chief, because Harris was dead at the time the testimony was given, and Preston Woods is a party. However, the court failed to rule upon appellants' exception to Question 204 of the testimony elicited on cross-examination. The failure of appellants to press the exception further upon the reading of the depositions at the trial waives the exception. Potter v. Mullins, 267 Ky. 822, 103 S.W.2d 274.

 Preston Woods also testified that John W. Woods, in mentioning the transaction to him, said "He had sold his * * * and wanted to know what was the reason I didn't sell mine." No objection nor exception was taken to this answer, and hence its incompetency under the statute was waived.

The question presented is whether the deed purporting to convey the mineral interests in the lands previously described in the title bonds to Preston Woods and Boyd by John W. Woods and his wife, is void under Section 210, Ky.Stat. Appellees contend that it is null and void because when executed appellees were in adverse possession. Appellants deny that the possession was adverse, and claim that the appellees are barred by laches.

Section 210, Ky.Stat., in its material portions reads as follows:

"All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person at the time of such sale, contract or conveyance, has adverse possession, shall be null and void."

Under the statute adverse possession, that is, the open and notorious possession and occupancy of real property under a claim of right, ripens into a fee simple title as perfect as one by deed from the original owner. It was incumbent upon appellees, in order to prevail, to show that Preston Woods and James Boyd were in actual possession of the two respective tracts at the time the deed purporting to convey the mineral interests was executed in 1903. Pond Creek Coal Co. v. Hatfield, 228 Ky. 806, 16 S.W.2d 442. Under the Kentucky decisions, to constitute adverse possession under this section, it need not have been for any specific length of time "if it was such as would have ripened into title by reason of its adverse character if it had continued uninterruptedly for the prescribed period." Phillips v. American Ass'n, Inc., 259 Ky. 402, 82 S.W.2d 456, 457.

The uncontradicted evidence shows that the possession both of Preston Woods and of Boyd was actual, visible, notorious and exclusive. They fenced, cultivated, used for pasture, and dwelt upon the land for over thirty years. But the possession must also be adverse or hostile. Cf. Adams v. Adams, 194 Ky. 202, 238 S.W. 386; Nelson v. Johnson, 189 Ky. 815, 226 S.W. 94; Lanham v. Huff, 228 Ky. 139, 14 S.W.2d

402, Pond Creek Coal Co. v. Hatfield, supra; Lykins v. Keeton, 234 Ky. 421, 28 S. W.2d 472.

Since under an executory land contract one enters into possession under and without hostility to his vendor, and as the vendee under a title bond is in the position of a vendee under an executory land contract, appellants urge that the record presents no evidence of adverse possession prior to 1903, when the deed was executed.

Possession is hostile when made with intent to claim and hold the land, not only against strangers, but against the grantor. Adverse possession may be proved by circumstantial evidence; and the record presents uncontroverted evidence of such hostile possession. The tracts of land were separated not only from each other, but from the John W. Woods place, by fencing. Preston Woods and James Boyd each paid taxes upon the tracts of land which they respectively occupied, from the time of the execution of the title bonds. Preston Woods and Boyd claimed ownership, and the agent of the company recognized the exclusive and hostile character of their possession when he wanted to buy their mineral rights. John W. Woods himself recognized their ownership. This constituted adverse possession within the terms of the statute, and the deed conveying the mineral interest in the Preston Woods and James Boyd lands was void insofar as these tracts of land are concerned.

Nor have the appellees been guilty of laches. The fact that surveyors blazed trees around the whole tract is no proof of notice to Preston Woods and Boyd that their mineral rights had been conveyed. The first notice that appellees had of such a claim, in 1931, was met with prompt protest, and suit followed within the year. In any case, since the deed of the mineral interests as to these two tracts is void, laches does not enter in. War Fork Land Co. v. Marcum, 180 Ky. 352, 202 S.W. 668.

The decree of the District Court is affirmed.