### FEDERAL OIL, GAS & COAL CO. v. MAYNARD et al.

#### No. 699.

District Court, E. D. Kentucky, Catlettsburg.

Feb. 5, 1943.

B. C. Tynes, of Huntington, W. Va. for plaintiff.

J. B. Clark, of Inez, Ky., for defendant.

SWINFORD, District Judge.

This case involves the ownership of all mineral rights to 209 acres of land in Martin County, Kentucky. Both the plaintiff and defendants ask that their title to these mineral rights be quieted.

In 1874 Isaac Maynard, Sr., became the owner in fee simple of the land in question. It was a part of a purchase of between 300 and 600 acres. On April 14, 1888, he conveyed this land to his two sons, Jesse Maynard and William Riley Maynard, by executing to each of them a general warranty deed for a specified part.

These deeds were lodged for record in the office of the clerk of Martin County Court on the following day. At the time of the conveyance Jesse Maynard was about twenty years of age, married and living with his wife in his father's home. William Riley was a lad of about 13 or 14 years living with his father. Shortly after the conveyance Jesse moved upon the land that had been conveyed to him. The part conveyed to William Riley included the home which he continued to occupy with his parents.

The deed to Jesse stated the consideration as follows: "Witnesseth, That the said party of the first part, in consideration of One Dollar, other good and valuable considerations and love and affection (said Jesse Maynard being a son of the parties of the first part) the receipt of which is hereby acknowledged, * * ."

The deed to William Riley stated the consideration as follows: "Witnesseth, that the said party of the first part, in consideration of One Dollar other good and valuable considerations and love and affection the party of the first part being the parents of said party of the Second part the receipt of which is hereby acknowledged, * * * ."

On May 10, 1889, Isaac Maynard and his wife Matilda conveyed to Henry R. Phillips, trustee, all the mineral rights in

and to the same land which the year before they had conveyed to Jesse and William Riley. The consideration was stated to be $112.50. No steps were taken to exercise ownership of the minerals until this suit to quiet title was filed on October 20, 1920. The parties are the successors in title to Henry R. Phillips, trustee, and Jesse and William Riley Maynard.

The plaintiff asserts that in September of 1887 one Lowry went into the section where this land is located and secured title bonds or options for the mineral rights from the owners of 143,000 acres. That a title bond to the mineral rights in the 209 acre tract here involved was obtained for a consideration from Isaac Maynard and that this title bond cannot be produced because it was destroyed by fire in 1912, when the Equitable building was burned in New York. That there ever was such a title bond or option is not clear from the record.

On the assumption that there was such a title bond the plaintiff relies on Sections 2351 and 2352 of Carroll's Kentucky Statutes to establish a prior claim. These sections of the Kentucky Statutes provide:

§ 2351 "A deed and warranty of land purporting to pass or assure a greater right or estate than the person can lawfully pass or assure, shall operate to convey on warrant so much of the right and estate as such person can lawfully convey."

§ 2352 "If such deed as is mentioned in the last section contains a general warranty of the estate it purports to convey, and there shall be a claimant of the land who has received any estate, real or personal, by gift, advancement, descent, devise or distribution from the vendor, such claimant shall be barred of recovery to the extent of the value of the estate so devised. And if, after the said claimant shall have recovered the land from the vendee aforesaid, or if, after having been required to answer, he has denied the reception of any estate in either of the modes before named, estate shall come to him in any such manner, it shall be lawful for the vendee, his heirs or personal representative, to recover from such claimant upon the warranty the value of such estate or so much thereof as may be sufficient to satisfy his demand."

Counsel for the defendants urges that the statute does not apply since it was not adopted or enacted in its present form (to include the words gift and advance)

until 1893, when the deed in question was executed in 1889. Evidently counsel is confused by the historical note to the present statute. This is to show its re-enactment after the new constitution and states 1893. Counsel for the plaintiff states that it was enacted in 1873. At any rate, it was the law in 1879 and reported as Section 18 of Chapter 63, page 587, of Bullitt and Feland's General Statutes. In this contention counsel for the defendants is clearly in error.

We must first determine whether the evidence is sufficient to establish that there was ever a title bond executed to the plaintiff's predecessor in title by Isaac Maynard, Sr. The evidence is meager. Its competency is subject to serious question. If there was such a bond does the record establish that it was destroyed?

The plaintiff offers in evidence a writing bearing date of September 6, 1887, between T. P. Trigg and associates, as first parties, and G. W. Kilgore and others, as second parties. This writing or agreement is premised on the securing of certain "options" for minerals in "Eastern Kentucky or West Virginia & Buchanan Co. Va." The options were to run three and six months.

The plaintiff's case fails for want of proof. In order to sustain the position of the plaintiff the court must infer too much. Allegations cannot be proved by making inferences from inferences.

The first question presented is, Was there an option from Isaac Maynard to Lowry in September 1887 or about that time? None is filed in evidence. No explanation is given of a failure to file the option. The only light thrown upon this failure is found in an avowal in the evidence of Mr. Tynes wherein he says that it was destroyed in a fire in New York in 1912 when the Equitable building burned. There is no proof that there was such a fire or if so, to what extent or in what way or how or why such a document, if any was ever in existence, happened to be in the building at the time of the fire. Before a court could find that an important document, affecting real estate, is no longer in existence there should be a clear showing of the reasons on which the party making such an assertion relies.

The court is next asked to assume that the alleged document was similar to those taken from other landowners in the im-

438

mediate locality in September 1887. The record does not establish that fact, but tends to deny that such an option was had. No explanation is given why the Maynard option was burned and the others were not.

Since the options, according to the agreement designated as Plaintiff's Exhibit No. 1, provided that the options were to run for "3 & 6 months", it might be inferred that the option, if any, from Isaac Maynard to Lowry was only for three or six months and expired long before the deeds from Isaac Maynard to Jesse and William Riley Maynard were executed.

The whole question of this supposed option is so highly speculative that the Court can find no reason in the record to find that it ever existed and if it did that it was destroyed by fire.

The Court is asked to find that because Jesse and William Riley lived in the home of their father, Isaac Maynard, they should be charged with notice that the minerals had already been contracted away at the time the deeds to them were executed. I can find no basis either on reason and principle or authority to reach such a conclusion. The deeds to Jesse and William Riley were made in April 1888, more than seven months after the September 1887 in which the option was supposed to be given. They put the deeds to record on the following day. Within a short while (a few weeks) Jesse moved upon his tract of land. William Riley lived upon his, which was the home place. About thirteen months later (May 10, 1889) notwithstanding the fact that Jesse and William Riley were in possession and living upon their respective tracts of land and held record title, the plaintiff's predecessor in title took the deed from Isaac Maynard for the mineral rights. It is significant that no mention is made in this deed to any prior option or contract. Jesse Maynard testified at this trial but apparently no one ever interviewed him at the time of the deed to Phillips. Another fact that should not be overlooked is that at the time of the deed to Phillips, Isaac Maynard was a man advanced in years and in poor health. He died a short while later.

The element of time plays an important part in many cases, and should not be overlooked here. The deeds to Jesse and William Riley were put to record in April 1888, they each recite a valuable consideration. There is no convincing proof that there was not a valuable consideration that passed to Isaac Maynard. The probabilities are that there was none. At any rate, these deeds of record stated a consideration. In the face of this fact the deed to the minerals taken over a year later made no reference to any prior ownership in the minerals, by reason of a title bond or option. No steps were taken until October 20, 1920, thirty-one years later, to establish a prior claim, to the owners in possession, in the minerals. After the suit was filed the case remained on the docket for fourteen years during the life of Judge Cochran. It indicates no effort to have the case tried during that time. No great effort was made to have the case tried for the past eight years. While it might be said that the defendants also seek to quiet title and should have been equally as diligent, the Court is cognizant of the fact that defendants, judging from disclosures in the record, are somewhat ignorant and illiterate.

■ There is a significant feature that has not been suggested by counsel but which impresses me as bearing directly upon the determination of the issue. I quote the following pertinent part of Section 210, Kentucky Statutes: "All sales or conveyances, including those made under execution, of any lands, or the pretended right or title to the same, of which any other person at the time of such sale, contract or conveyance, has adverse possession, shall be null and void." See Kentucky West Virginia Gas Co. et al. v. Preston Woods et al., 6 Cir., 110 F.2d 94.

Jesse and William Riley were both in actual possession with a deed of record to their respective tracts at the time the deed to the minerals in May 1889 was given.

Taking into consideration all the facts and circumstances involved coupled with the vague and indefinite proof that there was ever an option or title bond, I am of the opinion that the plaintiff owns no interest in any estate in the land and the defendant has a clear title in fee simple.

Findings of fact, conclusions of law and judgment should be submitted.