## Johnson et al. v. Cooper et al.

Feb. 19, 1943.

Jouett & Metcalf and J. Ashlin Logan for appellants.

William Hays for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This action was instituted by the appellants to enjoin the appellees from obstructing and interfering with the appellants' asserted right to use as an alley an eleven foot strip of land abutting and south of their respective lots which front northwardly on the south side of Broadway between Burns Avenue on the west and Bell's Alley on the east in the city of Winchester. The properties of the appellees front upon Gay Avenue, the next street south of Broadway, and extend northwardly to the eleven foot strip which thus separates the properties of the appellants and the appellees. The properties owned by the appellees, together with the eleven foot strip, are part of a tract formerly owned by one D. S. Gay who subdivided it into building lots and dedicated it as a subdivision by acknowledging and filing a plat in the office of the Clerk of the County Court on June 23, 1919. This plat shows the eleven foot strip of land in controversy as an "alley" extending from Burns Avenue to a point 58 3/10 feet west of Bell's Alley. The failure of the plat to show that the eleven foot alley extended all the way

to Bell's Alley is explained by testimony showing that the intervening space was occupied by a residence on the rear of Lots 10 and 11, which residence has been since demolished. However, when Gay sold Lots 10 and 11 he described them as extending to an alley on the north, employing the following language:

"House and lot No. 11 and lot No. 10 fronting on Gay Avenue 54 and 40 feet respectively and extending back an equal width to an alley on the north. Bounded on the north by an alley, on the east by Bell's Alley, on the South by Gay Avenue and on the West by lot No. 12 of Gay subdivision to the City of Winchester, a plat of which addition is of record in the office of the Clerk Clark County Court in Deed Book — page — * * *"

Similarly, the appellees derived title from Gay by deeds designating the properties conveyed by lot numbers as shown on the plat, and in each instance the lot was described as running back from Gay Avenue a designated distance to "an alley."

The defenses interposed by the appellees to the appellants' asserted right to use the eleven foot alley may be thus summarized:

(a) The eleven foot strip was a private alley designed for the sole benefit and use of the lots on the north side of Gay Street.

(b) Adverse possession of the eleven foot strip for more than fifteen years prior to the institution of the suit against all persons other than the Gay Street lot owners.

(c) The erection by Gay of a high board fence along the northern boundary of the eleven foot strip.

(d) The intention of Gay to exclude members of the negro race, to which appellants belong, from the use of any portion of his subdivision, evidenced by the erection of the fence, a verbal agreement at the time appellees purchased the property, and the insertion in the deeds of a clause prohibiting the sale, transfer or lease of the property to persons of African descent.

The answer was made a counterclaim in which appellees prayed that their title to the strip be quieted; that they recover damages from the appellants for trespass; and that further trespassing be enjoined. The is-

sues were completed, and on final submission the Chancellor dismissed appellants' petition, which also sought a recovery of damages, and awarded appellees the injunctive relief prayed in their counterclaim.

The testimony of the appellees and of Mr. Fluty, who was employed by Mr. Gay from 1910 to 1924 and who sold many of the lots in the Gay Subdivision and drew many of the deeds, substantiates appellees' claim that it was the intention of Gay, who is now dead, to exclude members of the negro race, who own property on Broadway, from the use of the alley in question. The testimony further shows that the City has never accepted the dedication of the alley, and that it does not appear as an alley on the City's maps. It also indicates that the appellees, in a large measure, for many years treated the alley as belonging to them, planted flowers in it, obstructed its entrances by latticed gates, and that appellants had only used the alley sporadically, and then over the objection of the appellees.

Conceding the correctness of the appellants' contentions that restrictions upon the use of real estate cannot be established by parol evidence, or otherwise than by recordable instruments, that the City's nonacceptance of the dedication did not militate against its validity as between the parties to this litigation, and that, after dedication, an alley or street cannot be held adversely by the grantor or those claiming under him; we are confronted with what seems to us the controlling question, whether the intention of Gay to create an alley for the benefit of the lots in his subdivision abutting thereon was established by competent evidence, and if so, whether that intention can prevail against the status which otherwise would have been created by his act in acknowledging and recording the plat showing the strip as an "alley" and his subsequent conveyance of lots described as running back to an "alley."

Excluding as incompetent the conversations which took place between the purchasers of lots in Gay's subdivision and Gay's agent at the time the lots were sold, and the conversations between Gay and his agent, there still remains the uncontrovertible fact that Gay built a high board fence along the entire length of the northern boundary of the 11 foot strip, and that this fence could have served no other purpose than to exclude the negro occupants of the property immediately north thereof.

Even if Gay had owned the property to the north, it would be difficult to reconcile his act in erecting this fence with the intention to dedicate this strip as a public alley. It is certain that he was not interested in benefiting members of the negro race, a fact made manifest by the restrictions which he caused to be put in his deeds excluding them from the ownership of property in his subdivision. The plat which he recorded showing the alley open only at one end, while sufficient to support the dedication of the strip as a public alley, did not necessarily convey the impression that it was to be public. Furthermore, it should not be overlooked that the appellants do not claim that they purchased their properties in the belief that they abutted upon an alley. Under this state of facts, should Gay's intention to establish a private alley for the benefit of the lot owners in Gay's subdivision control? In view of the principles enunciated in the following cases in which the intention of the dedicator is emphasized as the controlling factor, the Court is of the opinion that it should: Hall v. McLeod, 2 Metc. 98, 74 Am. Dec. 400; Terrell et al. v. Hart et al., Ky., 90 S. W. 953; Smith v. City of Kuttawa et al., 222 Ky. 569, 1 S. W. (2d) 979; Potter et al. v. Mullins, 267 Ky. 822, 103 S. W. (2d) 274; Foulk v. City of Louisville, 270 Ky. 828, 110 S. W. (2d) 665.

Judgment affirmed.

Whole Court sitting.

Judge Sims dissenting.

The majority opinion properly holds that the intention of Gay is controlling as to whether or not he dedicated this alley to the public. Also, it correctly says the fact that the recorded map or plat showing that the alley did not extend from street to street, but had a dead-end, did not prevent its dedication to the public. But the error the opinion falls into, as I see it, is that it erroneously concludes that the building of the fence by Gay along the northern boundary of the alley shows that it was not his intention to dedicate it to the public, but exhibits an intention upon his part to exclude the negroes (whose property abuts the alley on the north) from using the alley.

One of the usual and customary ways to dedicate a street or an alley is to record a map of a subdivision depicting the lots, streets and alleys thereof and then to

convey the lots with reference to the map. This is what Gay did in this instance. How could one express a clearer intention to dedicate an alley to the public? If Gay had not intended a public dedication of the alley, why record the map? And in conveying the lots why recite in the deeds that the property ran back to the alley (with no restriction on the use of the alley) if he did not intend to dedicate it to the public? When it is remembered that a private passway cannot be created by dedication, Potter v. Mullins, 267 Ky. 822, 103 S. W. (2d) 274, it is difficult for me to understand how the majority of the court arrived at the conclusion that Gay did not intend a public dedication of this alley. It long has been the law of this jurisdiction that when the owner of land subdivides it and records a map showing the lots, streets and alleys thereof, and in conveying the lots makes reference to the map, there is an immediate dedication of the streets and alleys not only to the purchaser of the lots, but to the public as well. City of Paducah v. Mallory, 225 Ky. 692, 9 S. W. (2d) 1015.

How it can be said with any degree of logic or reason that the building of the fence by Gay evidenced an intention on his part sufficient to overcome his recorded plat and subsequent deeds making reference thereto, clearly showing a public dedication of the alley, is more than my mind can grasp.