**FEDERAL GAS, OIL & COAL CO. v. MAYNARD et al.**

**No. 10045.**

Circuit Court of Appeals, Sixth Circuit.

Nov. 19, 1945.

See also 56 F.Supp. 824.

Buford C. Tynes, of Huntington, W. Va., and Ira M. Nickell, of Ashland, Ky., for appellant.

No appearance for appellees.

Before HICKS, SIMONS and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

Federal Gas, Oil and Coal Company, a corporation organized under the laws of Maine, filed in the district court a bill in equity against the individual appellees, all citizens and residents of Kentucky, to quiet title and for adjudication of ownership in the corporation of the mineral rights to some 209 acres of land in Martin County, Kentucky. In their answers, the defendants included counterclaims to fee simple ownership of the land to the exclusion of the mineral rights claimed by appellant.

For twenty years, this mountain land case slept as soundly as Rip Van Winkle is said to have slept in the Catskills. When it finally was awakened and brought to trial, the district judge, after considering the evidence adduced, dismissed the bill and decreed that ownership of the mineral rights involved on this appeal was vested in the Kentuckians.

On April 14, 1888, Isaac Maynard, who had already deeded several tracts of land to his older sons, conveyed by warranty deeds, in separate parcels, the controverted tracts to his two younger sons, Jesse and William Riley Maynard. On the following day, the two deeds of conveyance were duly recorded. At the time of these conveyances, Jesse Maynard was married and living with his wife in his father's home, but moved shortly thereafter upon the land which had been deeded to him. The youngest son, William Riley, to whom was conveyed the home place, was residing with his parents and continued to live with them. Each deed recited a consideration of "One Dollar, other good and valuable considerations and love and affection."

On May 10, 1889, a bit more than a year after the conveyances, the father and his wife deeded, for a consideration of $112.30, to Henry R. Phillips, Trustee, the remote vendor of appellant, all the mineral rights in the same land which they had conveyed to Jesse and William Riley Maynard.

■ Upon the trial, the appellant attempted to show that this mineral deed was executed in conformity with the terms and conditions of a title bond, or purchase agreement, given around September 27, 1887, to appellant's remote vendor, R. S. Lowry, who had procured title bonds or mineral-rights options on some 143,000 acres of land in the vicinity of the lands in controversy. As pointed out by the district judge, the record does not establish, but tends to "deny" the allegation, that any such title bond, option, or purchase agreement, ever existed. The evidence fell far short of showing that it did. Only one witness, Buford C. Tynes, long time lawyer-engineer-officer of appellant, testified upon the point. He introduced printed-form mineral purchase agreements, which he claimed were like the one alleged to have been obtained by Lowry from Isaac Maynard; and "avowed" that the alleged contract with Maynard had "been destroyed in the fire which destroyed the Equitable Building, New York City, in January 1912."

■ The district judge commented in his memorandum opinion that no explanation had been given "why the Maynard op-

tion was burned and others were not"; that it might be inferred that the option from Isaac Maynard to Lowry, if any such instrument ever existed, was to run only for three or six months, as did many of the other options exhibited in evidence. It was considered significant that no reference in the deed of conveyance from Isaac Maynard to Phillips, Trustee, was made to any prior option or purchase agreement. The judge concluded: "The whole question of this supposed option is so highly speculative that the court can find no reason in the record to find that it ever existed and if it did that it was destroyed by fire." Certainly, it could not appropriately be said that, upon this record, the finding of fact of the district court on the issue is clearly erroneous. The finding, therefore, binds us.

■ The appellant contends on appeal, as it did in the district court, that the two minor sons of Isaac Maynard had actual knowledge, or were charged with actual knowledge, of their father's alleged title bond to Lowry; wherefore, the respective deeds to them from their father were subject to his alleged mineral contract with Lowry. Emphasis is placed upon the fact that, at the time of the father's conveyances to them, the two minor sons were members of his household. The complete answer to this argument is that, if no title bond had been executed by their father, the minor sons could not, of course, be chargeable with knowledge, either actual or constructive, of a non-existent document. The argument is far fetched that, because each of the four older sons of Isaac Maynard executed title bonds, followed by mineral deeds, to the tracts of land conveyed to them by their father, it must be inferred against the land titles of the two younger sons that the father had bound their tracts with a title bond to Lowry, Trustee. The district court properly rejected so illogical an inference.

Appellant argues that the two warranty deeds to the tracts in issue, from Isaac Maynard to his sons Jesse and William Riley Maynard, were gifts or advancements without consideration other than love and affection; that the value of the lands conveyed, exclusive of the value of the minerals thereunder at the time of conveyance, exceeded the value of such minerals; and that, therefore, pursuant to the provisions of Carroll's Kentucky Statutes, Sections 2351 and 2352[1] the two younger Maynard sons and their privies are bound by the general warranty contained in their father's mineral deed, executed May 10, 1889, to Henry R. Phillips, Trustee, and are precluded from claiming any interest in the minerals under-lying the respective tracts conveyed to them by their father.

■ As stated by counsel for appellant, at bar and on brief, several Kentucky decisions have applied these statutes: Foreman v. Lloyd, 156 Ky. 772, 162 S.W. 83; Ball v. Wasioto & Black Mountain Railroad Co., 157 Ky. 166, 162 S.W. 810; Blankenship v. Haldeman, 226 Ky. 57, 10 S.W.2d 469. In the first-cited authority, Judge Carroll declared (156 Ky. 776, 162 S.W. 85): "The purpose of the statute as written is a just one. It prevents a vendee, holding under a covenant of general warranty, from being ousted from the estate by parties claiming under his vendor who have received, as a gratuity from the vendor, estate of greater value than they are seeking to recover from the vendee. In carrying out this legislative purpose, we do not see that the time that the estate was received by gift or advancement is at all

---

[1] Sec. 2351. "Deed and warranty passes estate owned at time.—A deed and warranty of land purporting to pass or assure a greater right or estate than the person can lawfully pass or assure, shall operate to convey on warrant so much of the right and estate as such person can lawfully convey. (1893, c. 150, p. 495, § 15.)"—

Sec. 2352. "Purchaser from ancestor evicted by heir may recover to extent of estate received by heir.—If such deed as is mentioned in the last section contain a general warranty of the estate it purports to convey, and there shall be a claimant of the land who has received any estate, real or personal, by gift, advancement, descent, devise or distribution from the vendor, such claimant shall be barred of recovery to the extent of the value of the estate so devised. And if, after the said claimant shall have recovered the land from the vendee aforesaid, or if, after having been required to answer, he has denied the reception of any estate in either of the modes before named, estate shall come to him in any such manner, it shall be lawful for the vendee, his heirs or personal representative, to recover from such claimant upon the warranty the value of such estate or so much thereof as may be sufficient to satisfy his demand. (1893, c. 150, p. 495, § 16.)"

material." The two later cases listed followed and applied the doctrine of Foreman v. Lloyd.

The district court concluded as a matter of law that Sections 2351 and 2352, Carroll's Kentucky Statutes, are not applicable to this case. He pointed to the significance of a Kentucky statute, not even "suggested by counsel" for defendants, as bearing directly upon the determination of the issue: "All sales or conveyances including those made under execution, of any lands, or the pretended right or title to the same, of which any other person at the time of such sale, contract or conveyance, has adverse possession, shall be null and void. * * *" Sec. 210, Carroll's· Kentucky Statutes.

In a controversy concerning mineral rights, this court, in Kentucky West Virginia Gas Co. v. Woods, 6 Cir., 110 F.2d 94, based decision on the quoted statute and affirmed the judgment of the same district judge who tried the instant case. The tracts of land involved were held to be free of claims to underlying oil, gas and minerals based on deeds to the mineral rights, because of adverse possession of fee simple owners. The facts of that case are complicated and it is deemed unnecessary to restate them. Suffice it to say that the position occupied by the appellees here is stronger than was that of the appellees in the cited case.

There is manifestly no clear error in the finding of the district court, resting on substantial evidence, that Jesse and William Riley Maynard were, under duly recorded deeds, in actual possession of their respective tracts at the time their grantor · father executed the deed to Phillips, Trustee, to the minerals underlying their lands. Along with the gratuity consideration of love and affection, the deeds to them recite a valuable consideration of One Dollar and other good and valuable considerations, though it is probable that no valuable consideration was actually paid. For some 31 years, no steps were taken by appellant, or its predecessors, to establish prior claim to the mineral rights over the owners in possession; and, when suit was finally instituted, it was permitted by appellant to lie dormant for some 20 years. This delay was not indicative of firm faith that, as a party not in possession, it had lawful claims to disputed mineral rights. Only nebulous evidence was introduced, when attempt was finally made to prove that a title bond, purchase agreement, or option, covering the mineral rights, had been executed prior to the fee simple deeds to appellees.

Before concluding, we feel constrained to comment upon the attitude of the attorney for appellees, who made no appearance, though notified by the clerk of the setting of the case for oral argument, and filed no brief in behalf of his clients. He has been of no aid whatever to them, or to this court, in the disposition of this case on appeal.

For the reasons heretofore stated, the judgment of the district court is affirmed.